2022 IL App (1st) 210274

Nos. 1-21-0274; 1-21-0282 (cons.)

Filed March 9, 2022

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LISA INMAN, Individually and as Administrator of the Estate of Jesse Inman, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 L 13312 |
| HOWE FREIGHTWAYS, INC., an Illinois Corporation, | ) ) ) | Honorable James N. O'Hara |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1     This case returns to us after we remanded the case for a new trial following the initial

appeal in *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459. On remand, defendant

Howe Freightways, Inc. (Howe), filed a motion to dismiss based on the doctrine of

*forum non conveniens*, a motion to reopen discovery, and a motion to release the appeal bond. The

circuit court denied all three motions. Thereafter, plaintiff Lisa Inman (plaintiff), individually and

on behalf of her late husband Jesse Inman's estate (Inman), filed a motion for summary judgment,

arguing that there was no need for a new trial because, based on the circumstances of the litigation,

only Howe could be found liable upon retrial. The circuit court agreed and granted plaintiff summary judgment.

¶ 2     Howe now appeals the circuit court's orders and contends that the court erred in denying its motion to dismiss based on *forum non conveniens*, its motion to reopen discovery, and its motion to release the appeal bond as well as erred in granting plaintiff's motion for summary judgment. Additionally, Howe contends that the court erred in determining when postjudgment interest began to accrue. For the reasons that follow, we affirm the circuit court's judgments.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Trial Court Proceedings

¶ 5     In September 2011, James Langholf, a truck driver and employee of Howe, was driving his semi-tractor trailer west on Interstate 80 in Iowa when he began to have engine trouble. Langholf pulled over to the shoulder of the highway and turned off his vehicle. When he could not restart it, he called Howe, who told him to call the manufacturer of his engine. Eventually, Langholf called a towing company, which dispatched Inman and Daniel Walsh in separate tow trucks to tow Langholf's tractor and his trailer. When Inman and Walsh arrived at the scene, Inman parked in front of Langholf, and Walsh parked behind Langholf. Shortly thereafter, a semi-tractor trailer driven by Herbert Terrell, an employee of Hiner Transport, LLC (Hiner Transport), and Hiner Equipment, LLC (Hiner Equipment) (jointly referred to as Hiner entities), sideswiped Walsh's tow truck and collided with the back of Langholf's truck. The force of the collision pushed Langholf's truck into Inman's tow truck, pinning Inman between the trucks. As a result of the collision, all four men died.

¶ 6     In April 2012, plaintiff initiated the litigation and sued Howe; Julie Langholf, on behalf of her late husband James Langholf's estate; and Hiner Equipment. A few months later, Hiner

Equipment filed a motion to dismiss based on the doctrine of *forum non conveniens* and contended that Poweshiek County, Iowa, was a more convenient location for the litigation than Cook County. Howe did not file its own motion or join in on Hiner Equipment's motion. The motion judge denied Hiner Equipment's motion in large part because the parties to the litigation and the potential witnesses resided in multiple different states, such that Hiner Equipment failed to meet its burden to show that Poweshiek County was a more convenient forum.[1]

¶ 7 As the case proceeded, plaintiff added more defendants, including Hiner Transport, and multiple counterclaims were filed between the parties. Meanwhile, Julie Langholf, individually and on behalf of James Langholf's estate, countersued the Hiner entities for the wrongful death of her husband. But in September 2016, the motion judge entered an agreed dismissal order whereby Julie Langholf dismissed her wrongful death counterclaims against the Hiner entities. However, the dismissal order did not affect any counterclaims for contribution brought by Howe or Julie Langholf against the Hiner entities or any counterclaims for contribution brought by the Hiner entities against Howe and Julie Langholf.

¶ 8 During the course of litigation, the motion judge imposed sanctions against Howe for its failure to timely disclose training and maintenance records related to James Langholf and his truck. As a result, the motion judge deemed admitted three allegations in plaintiff's then-operative third amended complaint, which were that (1) Langholf failed to complete a required safety course following a previous, preventable accident, (2) Howe failed to ensure that Langholf complied with its internal policy of completing the safety course following his previous, preventable accident and prior to receiving another dispatch, and (3) Howe and Langholf failed to properly install or

---

[1]The motion judge in this case was Judge James N. O'Hara.

maintain his tractor. Later, the motion judge imposed another set of sanctions against Howe for its failure to preserve Langholf's tractor, including its engine and turbo. The motion judge deemed admitted the allegation in plaintiff's now fourth-amended complaint that Howe and Langholf failed to properly repair or maintain the tractor engine, including its turbo. The motion judge also deemed admitted the corresponding allegations from the third amended complaint—now in the fourth amended complaint—that were part of the initial sanctions imposed against Howe.

¶ 9    Before trial, plaintiff and the Hiner entities entered into a high-low settlement agreement. To this end, the Hiner entities filed a motion for a finding that the settlement agreement was negotiated in good faith pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2010)). Additionally, in relevant part, the Hiner entities sought to dismiss any and all counterclaims for contribution between them and Howe and to bar any and all future claims for contribution by any named or potential tortfeasor against them. Over Howe's objection, the motion judge (1) found that the settlement was negotiated in good faith, (2) ordered that any and all counterclaims for contribution between the Hiner entities and Howe be dismissed with prejudice pursuant to Contribution Act, and (3) held that any and all future claims for contribution by any named or potential tortfeasor against the Hiner entities should be barred pursuant to the Contribution Act.

¶ 10    As the trial neared, the trial judge ruled on various motions *in limine*, including plaintiff's motion *in limine* No. 32 and Howe's motions *in limine* Nos. 35 and 37.[2] Plaintiff's motion *in limine* No. 32 sought to bar eyewitness Franklin Green from testifying at trial that Terrell passed him on the highway before the accident and was not wearing a shirt, but after the accident, when

---

[2]The trial judge in this case was Judge Thomas J. Lipscomb.

Green went to render aid at the scene, he observed that Terrell was pinned in his seat wearing a shirt. The trial judge granted the motion and barred this testimony. Howe's motion *in limine* No. 35 sought, in part, to bar plaintiff's expert witness from offering an opinion that, despite the issues with the engine of Langholf's truck, Langholf could have reached the next highway exit. The trial judge denied the motion as it related to this testimony. Howe's motion *in limine* No. 37 sought to bar, in part, any assertion that a violation of its purported internal policy requiring a driver to complete a safety training course after a preventable accident but before receiving another dispatch established a standard of care that, if breached, constituted negligence. The trial judge denied the motion as it related to establishing a standard of care, relying on the motion judge's earlier sanctions order that deemed admitted the allegation regarding Howe's failure to ensure that Langholf complied with its internal policy of completing the safety training course.

¶ 11    In plaintiff's fourth amended complaint, which was filed approximately a week before the trial began, she did not name Julie Langholf, on behalf of James Langholf's estate, as a defendant. Nevertheless, on the day the trial began, the trial judge dismissed Julie Langholf and Hiner Equipment as defendants, pursuant to plaintiff's motion. As such, plaintiff's causes of action remained pending against only Howe and Hiner Transport. Though the Hiner entities had entered into the high-low settlement with plaintiff, only Hiner Transport was required to participate in the trial. Although no witnesses from any Hiner entity testified, Hiner Transport was represented by counsel throughout the trial and would appear on the jury's verdict form.

¶ 12    We provided a full recitation of the trial evidence in *Inman*, 2019 IL App (1st) 172459, ¶¶ 20-49. Following the trial, the jury returned a verdict, finding both Howe and Hiner Transport liable and allocating 57% of that liability to Howe and 43% of that liability to Hiner Transport. The jury awarded plaintiff $19,010,273 in total damages. In response to a special interrogatory

that asked the jury if any act or omission of Howe proximately caused the injuries and death of Inman, the jury answered in the affirmative. On May 18, 2017, the trial judge subsequently entered judgment in accordance with the jury's verdict.

¶ 13    Thereafter, Howe filed a posttrial motion primarily arguing that it was entitled to a judgment notwithstanding the verdict because plaintiff failed to establish that the acts and omissions alleged against it proximately caused Inman's injuries and death. In the alternative, Howe argued that it was entitled to a new trial on several grounds, including that (1) the jury's verdict and answer to the special interrogatory were against the manifest weight of the evidence, (2) the motion judge erred in entering the discovery sanctions and the trial judge erred in refusing to reconsider those sanctions, and (3) the trial judge erred with respect to its rulings on plaintiff's motion *in limine* No. 32 and Howe's motions *in limine* Nos. 35 and 37. Further, in the alternative, Howe sought a setoff of the damages award to account for plaintiff's pretrial settlement with Hiner Transport. The trial judge ultimately denied Howe's posttrial motion, in most respects, but did grant Howe a setoff in the amount of $1,275,000 against the total damages award. The next day, upon plaintiff's petition, the trial judge approved the settlement amount ($1,275,000) between her and Hiner Transport, ordered the disbursements of the settlement proceeds, and dismissed Hiner Transport from the litigation with prejudice.

¶ 14                                    B. Direct Appeal

¶ 15    On direct appeal, Howe raised numerous contentions of error about the trial court proceedings. Although we found the majority of Howe's contentions of error meritless, we did find that the trial judge erred in granting plaintiff's motion *in limine* No. 32, which prevented Green from testifying that, prior to the accident, he observed Terrell shirtless and, after the accident, observed Terrell with his shirt on. Because such evidence was a potentially crucial observation to

explain an unexplainable accident and it could have dramatically affected the jury's allocation of fault, we found the error warranted a new trial. We also found that the motion judge improperly sanctioned Howe by deeming admitted that Langholf failed to complete a required safety course following his preventable accident and Howe failed to ensure that Langholf complied with its internal policy of completing the safety course following the preventable accident. Lastly, we found that, on remand, the trial judge could reconsider Howe's motion *in limine* No. 37 on the merits.

¶ 16    Despite reversing on these issues, we affirmed the trial judge's denial of Howe's motion for a judgment notwithstanding the verdict because the evidence at trial supported the jury's conclusion that Howe's conduct was a proximate cause of Inman's injuries and death. Additionally, we affirmed the trial judge's denial of a new trial where the jury's general verdict, including its apportionment of liability, and its answer to the special interrogatory on proximate causation were not against the manifest weight of the evidence. We also affirmed the motion judge's sanctions imposed against Howe, which deemed admitted that Howe and Langholf failed to properly maintain his tractor, including its engine and turbo. Lastly, we affirmed the trial judge's denial of Howe's motion *in limine* No. 35, which sought, in part, to bar plaintiff's expert witness from offering an opinion that, despite the engine issues, Langholf's truck could have reached the next highway exit. We issued our decision in May 2019, and our supreme court denied Howe's petition for leave to appeal in September 2019. On November 6, 2019, the clerk of the appellate court issued our mandate.

¶ 17                                    C. Remand

¶ 18                                    1. Howe's Motions

¶ 19    In December 2019, on remand, the case returned to the original motion judge (hereinafter referred to as the circuit court). That month, Howe filed a motion to release the appeal bond that had been procured with Western Surety Company. Howe argued that, since the bonded judgment was vacated by this court, the bond issued by Western Surety Company should be released. In response, plaintiff argued that this court's opinion in *Inman*, 2019 IL App (1st) 172459, did not vacate the judgment and remand for a new trial on all issues, which would have included the monetary judgment. According to plaintiff, none of this court's rulings involved the issue of damages, as Howe never contested them on appeal. Plaintiff asserted that allowing Howe's request to release the appeal bond would put her entire monetary judgment at risk.

¶ 20    Also in December 2019, Howe filed a motion to dismiss based on the doctrine of *forum non conveniens*, arguing that such a motion was appropriate at that time because the circumstances had changed making Poweshiek County, Iowa, a substantially more convenient forum than Cook County. Specifically, Howe highlighted that Julie Langholf, an Illinois resident, and the Hiner entities, who were Indiana-based companies, were no longer involved in the case. Howe pointed out that the motion judge denied Hiner Equipment's motion to dismiss based on *forum non conveniens* in part because the parties were scattered across multiple states. But Howe asserted that, because the Hiner entities and Julie Langholf were no longer involved in the litigation, the circumstances had drastically changed. As such, Howe contended that these changed circumstances in combination with the relevant factors involved in a *forum non conveniens* analysis made Poweshiek County the more convenient forum.

¶ 21    Howe attached several exhibits to its motion, including evidence that its principal place of business was in Rockford, as well as that Inman was an Iowa resident at the time of his death and plaintiff still lived in Iowa. Howe also attached evidence that, prior to going out of business, the

Hiner entities' principal place of business was in Indiana. Additionally, Howe attached an affidavit from Christopher Starrett, currently an assistant district commander for the Iowa State Patrol, who led the investigation into the cause of the accident in this case. Assistant District Commander Starrett averred that he lived in Grinnell, Iowa, and worked in Des Moines, Iowa. Given the distance from his home and work in Iowa, Assistant District Commander Starrett asserted that a retrial in Cook County would be substantially inconvenient, especially because it would be the second time he would be required to come to Cook County to testify as a witness. Conversely, Assistant District Commander Starrett stated that a trial in Poweshiek County would be substantially more convenient, given the proximity to his home and work. Howe similarly attached affidavits from Elaine Schellhorn, an Iowa-based truck driver who witnessed the accident, and Green, the Oklahoma-based truck driver who observed Terrell shirtless before the accident. Both Schellhorn and Green averred that a trial in Cook County would be inconvenient for them compared to a trial in Poweshiek County, given where they lived. Howe further attached trial transcripts showing that Poweshiek County Deputy Sheriff Jonathan Cheney and Tisha Miller, an emergency medical technician, both of whom received dispatches about the accident, lived in Deep River, Iowa, and Brooklyn, Iowa, respectively. Lastly, Howe attached various court statistics for the circuit court of Cook County in 2017 and the Iowa court system generally in 2016.

¶ 22    In response, plaintiff posited that Howe's alleged changed circumstances did not support the filing of a *forum non conveniens* motion following this court's remand for a new trial. Plaintiff asserted that Howe had slept on its right to file such a motion by waiting to file it upon remand, rather than filing its motion at various other times in the proceedings. To this end, plaintiff argued that Howe waited too long to file the motion and, in any event, the relevant factors involved in a *forum non conveniens* analysis did not favor transfer to Poweshiek County.

¶ 23    In January 2020, Howe filed a motion to reopen discovery but noted that the motion was brought in the event that the circuit court denied its motion to dismiss based on *forum non conveniens*. Howe contended that this court did not limit the remand for a new trial on only the issue of liability and, thus, the issue of damages was still relevant for a new trial. As such, Howe argued that it should be allowed to re-depose plaintiff on the issue of damages and question her on her current relationship status because a widow was not entitled to damages for loss of society and sexual relations if she remarried. Additionally, Howe posited that it should be allowed to question plaintiff about the general well-being of her and her children and any mental health treatment she or her children have received since the time of her trial testimony. Howe also suggested that plaintiff be allowed to depose two mechanics, if she chose, and sought the ability of all parties to update their Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) disclosures.

¶ 24    In response, plaintiff argued that Howe had mispresented the language of the appellate court mandate and opinion and that, by failing to raise the issue of damages in its posttrial motion or on appeal, Howe had forfeited any argument over the jury's damages award. Plaintiff asserted that, based on this court's opinion, we remanded the case for a new trial on the allocation of fault only.

¶ 25    In October 2020, the circuit court held oral argument on Howe's various motions, and two months later, the court entered a written order on them. Concerning Howe's *forum non conveniens* motion, the court observed that Howe admitted that the Hiner entities and Julie Langholf were dismissed from the case " 'prior to trial.' " According to the court, the circumstances changed at that moment rather than at the time Howe filed its motion. The court remarked that Howe's motion was "potentially untimely," but nevertheless discussed the *forum non conveniens* balancing test and based its ultimate ruling on that test. The court first found that plaintiff's chosen forum of

Cook County was entitled to some weight. The court noted that, while plaintiff did not file the lawsuit in her home state, which was Iowa, she did file the lawsuit in a state connected to the litigation by way of Howe's residency in Illinois and its driver, Langholf, being an Illinois resident prior to his death. Next, the court discussed various private interest factors utilized during a *forum non conveniens* analysis.

¶ 26     Concerning the first factor—the convenience of the parties—the court observed that plaintiff, an Iowa resident, wanted to try the case in Illinois and Howe, an Illinois resident, wanted to try the case in Iowa. Because of this, the court found the factor did not favor transferring the case. Concerning the second factor—the relative ease of access to sources of testimonial, documentary, and real evidence—the court observed that the availability of documentary evidence had little bearing on the outcome of the motion given that the "evidence has already been shared." In regard to the ease of access to sources of testimonial evidence, the court stated that seven relevant witnesses resided in Iowa, four resided in Illinois, and one resided in each of Oklahoma, Alabama, Florida, and Virginia. Although the court noted that evidence depositions could be used in lieu of live, trial testimony for certain witnesses, as was done during the original trial, it asserted that critical witnesses resided in both Illinois and Iowa. As such, the court concluded that Iowa was not a substantially more convenient location for the access to sources of testimonial evidence. The court next discussed two other factors—the availability of compulsory process to secure the attendance of unwilling witnesses and the cost of attendance. It observed that there was no reason to believe that the Iowa witnesses would be unwilling to travel to Illinois if they were needed.

¶ 27     The circuit court next discussed the various public interest factors utilized during a *forum non conveniens* analysis. Regarding the first factor—the administrative difficulties presented by adding further litigation to the court docket in an already congested forum—the court

concluded that the Poweshiek County court system was less congested than Cook County's court system. Although the court found this factor favored dismissal, it asserted that the factor was not dispositive and should be given less weight than other factors. Concerning the second and third factors—the unfairness of imposing the expense of trial and the burden of jury duty on residents with little connection to the litigation, as well as the interest in deciding localized controversies locally—the court remarked that the alleged acts and omissions of Howe's employees—including David Grimm, its Illinois-based director of safety and maintenance—were crucial in analyzing the events that culminated in Inman's death. As such, the court found that Illinois had a sufficient interest in the litigation and using Cook County jurors was fair. After balancing all the factors, the court concluded that Howe had not established that the factors strongly favored transfer to Poweshiek County. Therefore, the court denied Howe's motion.

¶ 28    After denying Howe's *forum non conveniens* motion, the circuit court denied Howe's request to reopen discovery and found that it was not appropriate in light of the appellate court mandate. Lastly, the court asserted that any decision as to whether damages should be at issue in the new trial was reserved for the trial judge. Consequently, the court denied Howe's request to release the appeal bond pending further proceedings.

¶ 29    After the circuit court denied Howe's *forum non conveniens* motion, Howe filed a petition for leave to appeal to this court under Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020), which we denied.

¶ 30                                    2. Plaintiff's Motion

¶ 31    Following the denial of Howe's motions, plaintiff filed a motion for summary judgment, contending there were two bases for summary judgment. First, plaintiff highlighted that a jury had found Howe negligent in causing Inman's injuries and death, specifically allocating its fault at

57%. Plaintiff further highlighted that this court affirmed the jury's finding that Howe's acts and omissions were a proximate cause of Inman's injuries and death, which therefore became the law of the case. Plaintiff argued that, because she and the Hiner entities entered into a good faith settlement that Howe never challenged in its posttrial motion or on appeal, Howe was barred from introducing any evidence against the Hiner entities under Illinois law. As such, plaintiff concluded that Howe was entirely responsible for the remaining judgment after the setoff. Second, plaintiff argued that, under *Crim v. Dietrich*, 2020 IL 124318, Howe's failure to contest the jury's damages award, the issue of sole proximate cause, and the good faith settlement between her and the Hiner entities in its posttrial motion and on appeal resulted in Howe's forfeiture of those issues and divested all courts of jurisdiction to hear any argument on them. Plaintiff accordingly contended that summary judgment should be entered *nunc pro tunc* to May 18, 2017, the date the trial judge entered judgment on the jury's verdict, as there was nothing left to retry. In response, Howe posited that plaintiff misunderstood this court's opinion and that we did not leave the jury's damages award undisturbed because our specific directions on remand did not expressly limit the retrial to liability.

¶ 32    In February 2021, the circuit court entered a written order on plaintiff's motion for summary judgment. The court observed that this court affirmed the jury's finding that Howe was a proximate cause of Inman's injuries and death and only reversed on an evidentiary issue—Green's precluded testimony—that pertained specifically to the allocation of fault among Hiner Transport and Howe. As such, according to the circuit court, the only issue to be decided at a new trial was how to allocate liability given the inclusion of Green's previously precluded testimony. The court highlighted that, because of plaintiff's settlement with the Hiner entities, Hiner Transport was no longer a party to the case and could not be listed on a verdict form. In other words, according to the court, the only defendant who could be at fault in a new trial would be Howe

because the Contribution Act and the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2010)) barred claims of contribution against codefendants who settle in good faith. Consequently, the court granted plaintiff summary judgment and entered a final judgment in her favor and against Howe in the amount of $17,235,273 (the jury's damages award minus the setoff). Although plaintiff had requested that summary judgment be entered *nunc pro tunc* to May 18, 2017, the court did not make such a finding in granting plaintiff summary judgment.

¶ 33    Howe subsequently appealed the circuit court's order granting summary judgment to plaintiff as well as the court's denial of its *forum non conveniens* motion, motion to reopen discovery and motion to release the appeal bond.

¶ 34    Howe also filed a motion to continue the stay of enforcement of the bonded judgment based on the previously approved appeal bond. In arguing for the stay of enforcement, Howe, in part, posited that the postjudgment interest in the case began to accrue when the circuit court granted summary judgment in plaintiff's favor in February 2021, not when the court entered judgment on the jury's verdict in May 2017. Plaintiff responded and did not object to Howe's request for a continued stay of enforcement of the judgment or the amount of the current bond. Rather, plaintiff objected to Howe's contention that the postjudgment interest in the case began to accrue when the circuit court granted summary judgment in plaintiff's favor in February 2021. Instead, plaintiff argued that postjudgment interest began to accrue in May 2017, when the court entered the uncontested and unchallenged judgment in the case. The circuit court granted Howe's motion to continue the stay of enforcement of the judgment based on the previously approved appeal bond, but it found that the postjudgment interest in the case began to accrue on the date of the original judgment in May 2017. Howe subsequently filed another notice of appeal that appealed the same

orders in its initial notice of appeal but added the circuit court's order finding that postjudgment interest began to accrue in May 2017.

¶ 35    While both appeals were pending, but before briefing began, we consolidated the appeals on Howe's motion. This consolidated appeal followed.

¶ 36                                II. ANALYSIS

¶ 37                          A. *Forum Non Conveniens*

¶ 38    We first address the circuit court's denial of Howe's motion to dismiss based on the doctrine of *forum non conveniens*, as a successful motion to dismiss would obviate the need to discuss the remaining issues in the case. Howe contends that the court erred in denying the motion because it was timely brought where the circumstances had changed making Poweshiek County, Iowa, substantially more convenient than Cook County.

¶ 39    When two potential forums exist for litigation, "the equitable doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum." *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 171 (2003). The doctrine grants the circuit court the ability to decline jurisdiction of a case, even if it has proper jurisdiction over the parties and subject matter, when "it appears that another forum can better serve the convenience of the parties and the ends of justice." *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 12. The doctrine is premised upon "considerations of fundamental fairness and sensible and effective judicial administration." *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). Although the doctrine may be applied on an intrastate basis—meaning between two counties in Illinois— this case involves the doctrine being analyzed on an interstate basis, where the focus is "whether the case is being litigated in the most appropriate state." *Fennell*, 2012 IL 113812, ¶ 13.

¶ 40    The general principles of the *forum non conveniens* doctrine are well recognized, but each case is unique and must be evaluated on its own facts. *Id.* ¶ 21. In determining whether to transfer a case under the doctrine, the circuit court must balance multiple private and public interest factors. *Id.* ¶¶ 15-17. The private interest factors include (1) the convenience of the parties, (2) the relative ease of access to testimonial, documentary, and real evidence, (3) the availability of compulsory process to secure the attendance of unwilling witnesses, (4) the costs to secure the attendance of willing witnesses, (5) the possibility of viewing the site where the accident occurred, if appropriate, and (6) "all other practical considerations that make a trial easy, expeditious, and inexpensive." *Id.* ¶ 15. The public interest factors include (1) the interest in deciding controversies locally, (2) the unfairness of imposing the burden of jury duty on residents of a forum with little connection to the litigation, and (3) the administrative difficulties caused by adding litigation to already congested court dockets rather than resolving the case at its origin. *Id.* ¶ 16. The court must not place too much emphasis on any one factor, but rather must balance all private and public interest factors together and determine whether, under the totality of the circumstances, "the balance of factors strongly favors" dismissal of the litigation. *Id.* ¶ 17.

¶ 41    Before weighing the various private and public interest factors, the circuit court must determine how much weight to give the plaintiff's chosen forum. See *id.* ¶ 18. "Unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed." *Id.* In other words, "the battle over forum begins with the plaintiff's choice already in the lead." *First American Bank v. Guerine*, 198 Ill. 2d 511, 521 (2002). Generally, if the plaintiff is not a resident of the chosen forum or the accident at issue in the litigation did not occur in the chosen forum, the plaintiff's choice is afforded less deference. *Fennell*, 2012 IL 113812, ¶ 26; *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442-43 (2006). "A plaintiff's 'home

forum' for purposes of an interstate *forum non conveniens* motion is the plaintiff's home State." *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 553 (1992). The defendant bears the burden to demonstrate "that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties." *Fennell*, 2012 IL 113812, ¶ 20.

¶ 42     Another wrinkle in this *forum non conveniens* analysis is the time at which Howe filed its motion. Under Illinois Supreme Court Rule 187(a) (eff. Jan 1, 2018), a motion to dismiss based on *forum non conveniens* "must be filed by a party not later than 90 days after the last day allowed for the filing of that party's answer." However, because Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) allows for good cause extensions of time to perform acts required by the supreme court rules, this court has previously declined "to read Rule 187 as an absolute prohibition against filing such a motion beyond the limit prescribed." *In re Marriage of Clark*, 232 Ill. App. 3d 342, 350 (1992). This is because the defendant should not be put in a position where it has to "make the choice as to filing a *forum non conveniens* motion when the basis therefor may not have been clear or deferring filing at the risk of having the motion denied because of delay." *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 241 (1986). As such, "Illinois law provides that a challenge to forum may be renewed where the circumstances affecting any of the *forum non conveniens* factors have changed." *Eads v. Consolidated R. Corp.*, 365 Ill. App. 3d 19, 29 (2006). Still, "[a] defendant who believes that the forum chosen by the plaintiff is inconvenient should not allow the lengthy periods of time which were involved in these cases to pass without asking the court to decline jurisdiction and dismiss the case." *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 147 (1985).

¶ 43     The resolution of a *forum non conveniens* motion lies within the sound discretion of the circuit court and may only be reversed if the court abused its discretion in balancing the applicable

factors. *Fennell*, 2012 IL 113812, ¶ 21. An abuse of discretion occurs only "where no reasonable person would take the view adopted by the circuit court." *Id.*

¶ 44     Initially, we note that, in the order denying Howe's *forum non conveniens* motion, the circuit court found Howe's motion "potentially untimely" but ultimately based its denial of the motion on the balancing test of the *forum non conveniens* factors. Because the court did not base its denial on the timeliness, or lack thereof, of Howe's motion, we will proceed directly to the *forum non conveniens* balancing test of the private and public interest factors, which is where the court utilized its discretion. First, however, we must decide how much deference plaintiff's chosen forum of Illinois should receive. In the present case, there is no dispute that, at the time Inman died, he was a resident of Iowa. Likewise, there is no dispute that plaintiff remains a resident of Iowa. Furthermore, the accident in this case occurred in Iowa. Because the accident did not occur in Illinois, and neither Inman nor plaintiff were or are residents of Illinois, plaintiff's choice to file her lawsuit in Illinois is entitled to less deference. See *id.* ¶ 26; *Langenhorst*, 219 Ill. 2d at 442-43. But less deference does not mean no deference. See *Guerine*, 198 Ill. 2d at 518. As such, plaintiff's chosen forum of Illinois is still entitled to some deference.

¶ 45                              1. Private Interest Factors

¶ 46     With the level of deference to plaintiff's chosen forum decided and the principles of a *forum non conveniens* analysis in mind, we turn to the private interest factors, beginning with the convenience of the parties. As we noted, plaintiff resides in Iowa, while Howe—the lone remaining defendant—resides in Illinois. Given this, the first factor does not favor dismissal, as the circuit court found. See *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 275-76 (2011) (finding that the convenience of the parties did not favor dismissal in favor of Texas because the defendant "could

not genuinely contend that litigating the case in Illinois, where it maintained its corporate headquarters, would prove inconvenient to it").

¶ 47    We next look at the relative ease of access to testimonial, documentary, and real evidence. First, as the circuit court noted, because the documentary evidence in this case has already been shared, the relative ease of access to such evidence has little bearing on the outcome of Howe's motion. Moreover, generally, due to modern technology, the location of documentary evidence is a less significant consideration than ever before. See *Fennell*, 2012 IL 113812, ¶ 36 (observing that "the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of Internet, email, telefax, copying machines, and world-wide delivery services, since those items can now be easily copied and sent"). As such, the location of documentary evidence does not favor dismissal. Regarding real evidence, the parties do not identify any such evidence. Thus, the relative ease of access to it has no effect on the analysis. Consequently, the relative ease of access to testimonial evidence is what matters most in this case.

¶ 48    During the initial jury trial, there were 15 witnesses, 4 of which were expert witnesses and 4 of which were the plaintiff and past and current employees of Howe. The remaining witnesses were (1) Justin Schwarz, an Iowa-based dispatcher for Hanifen towing company, who dispatched Walsh and Inman to Langholf's stalled truck, (2) Dr. Michele Catellier, the Iowa-based medical examiner, (3) Schellhorn, the Iowa-based truck driver, who witnessed the accident, (4) Green, the Oklahoma-based truck driver, who observed Terrell shirtless before the accident, (5) Deputy Sheriff Cheney, the Iowa-based sheriff, who received a dispatch about the accident, (6) Miller, the Iowa-based emergency medical technician, who received a dispatch about the accident, and (7) Assistant District Commander Starrett, the Iowa-based assistant district commander for the Iowa

State Patrol, who led the investigation into the cause of the accident. As will be discussed more fully later, our remand in this case was for a new trial on only the allocation of fault, not on the issue of damages. As damages would not be an issue for the new trial, Dr. Catellier and Miller would likely not be needed as trial witnesses because their testimony focused on Inman's injuries as a result of the accident. This means that of the nonexpert witnesses and the witnesses not a party or related to the parties, only Schwarz, Schellhorn, Green, Deputy Sheriff Cheney, and Assistant District Commander Starrett would be needed for a new trial. Of those five witnesses, Schwarz, Schellhorn, and Green all testified via a videotaped evidence deposition. There is no reason these three witnesses could not do the same for a subsequent trial (see *Taylor v. Lemans Corp.*, 2013 IL App (1st) 130033, ¶ 21), meaning only Deputy Sheriff Cheney and Assistant District Commander Starrett could be inconvenienced by traveling to Illinois for a new trial. Indeed, as Assistant District Commander Starrett averred in his affidavit, given his work and residence in Iowa, traveling to Illinois for a second time to be a witness in this case would be substantially inconvenient for him. Regardless, for Deputy Sheriff Cheney and Assistant District Commander Starrett, their testimony could be had by videoconference technology if travel were truly that inconvenient. See *In re R.D.*, 2021 IL App (1st) 201411, ¶ 24.

¶ 49    Beyond those witnesses, there were four party witnesses or witnesses related to the parties, including plaintiff, who likely would not need to testify again due to her testimony being primarily related to damages. The remaining three witnesses were Ken Howe, Howe's president, who resides in Illinois; David Grimm, Howe's director of safety and maintenance, who lives in Illinois; and Margaret O'Brien, Howe's previous director of safety and maintenance, who now lives in Florida. Although none of them were eyewitnesses to the accident, all three are critical to the issue of Howe's liability. And for these three witnesses, nothing in record indicates that participating in a

new trial in Illinois would be inconvenient for them. Moreover, for O'Brien, traveling from Florida to Illinois would undoubtedly be more convenient than traveling from Florida to Iowa.

¶ 50    Lastly, there were four expert witnesses in this case—two for plaintiff and two for Howe. It is true, as Howe notes, that the circuit court appeared to assign equal weight to the location of the expert witnesses as the lay witnesses. And as Howe highlights, Illinois courts are cautious to afford the same weight to the location of expert witnesses as lay witnesses, especially because expert witnesses are compensated for any inconvenience in travel. See *Fennell*, 2012 IL 113812, ¶¶ 33-34; *Laverty v. CSX Transportation, Inc.*, 404 Ill. App. 3d 534, 539 (2010). Nevertheless, given that many witnesses in the initial trial testified via evidence depositions and some witnesses needed to resolve the issue of liability reside in Illinois and Florida, the circuit court came to the correct ultimate conclusion that the relative ease of access to testimonial evidence did not favor dismissal.

¶ 51    We next turn to the availability of compulsory process to secure the attendance of unwilling witnesses. It is undisputed that an Illinois court would not have subpoena power over an unwilling witness from Iowa and, thus, could not compel any nonparty witnesses located in Iowa. See *Gridley*, 217 Ill. 2d at 174. Because there are more nonparty witnesses residing in Iowa than Illinois, Iowa has an advantage in regard to the availability of compulsory process to secure the attendance of unwilling witnesses. Regarding the costs to secure the attendance of willing witnesses, we generally look at the transportation costs to bring the various witnesses to the potential forums. See *Evans v. Patel*, 2020 IL App (1st) 200528, ¶ 45. Because the majority of the nonparty witnesses live in Iowa, the costs to secure the attendance of willing witnesses also favors Iowa.

¶ 52    The penultimate private interest factor is the possibility of viewing the site where the accident occurred. Although the circuit court noted this factor as one generally relevant to a *forum non conveniens* analysis, it did not specifically include the factor in its analysis. This "factor is not concerned with the *necessity* of viewing the site of the injury, but rather is concerned with the *possibility* of viewing the site, if appropriate." (Emphases in original.) *Dawdy*, 207 Ill. 2d at 178. Certainly, upon retrial on the issue of liability, it is possible that a site visit could occur, given the importance of the highway to the case, and such a visit would be more practical if the case were tried in Iowa versus Illinois. See *Fennell*, 2012 IL 113812, ¶ 39 (finding that if the "case were tried in St. Clair County, and the circuit court determines that viewing the premises is appropriate or necessary, it would be irrational for a jury composed of St. Clair County residents to travel to Mississippi or Louisiana to view the premises, when such viewing could be accomplished more expeditiously if this case were tried in Mississippi"). As such, this factor weighs in favor of dismissing the case.

¶ 53    The final factor is "all other practical considerations that make a trial easy, expeditious, and inexpensive." *Id.* ¶ 15. None of the parties have identified any other practical consideration involved in this *forum non conveniens* analysis, and the circuit court likewise did not identify any. However, we observe that, due to where this case is procedurally, it is undeniable that the case would proceed easier, more expeditiously and inexpensive in Illinois rather than in Iowa, where the case would have to begin anew.

¶ 54                              2. Public Interest Factors

¶ 55    We now turn to the relevant public interest factors, beginning with the interest in deciding controversies locally. Although the situs of the accident generally is the most important factor in giving an action a local interest (see *Dawdy*, 207 Ill. 2d at 183; *Peile v. Skelgas, Inc.*, 163 Ill. 2d

323, 343 (1994)), plaintiff's allegations of negligence focused not only on Langholf's conduct on the highway in Iowa but also on Langholf's conduct in maintaining his semi-tractor engine and the conduct of Howe in ensuring that Langholf completed safety training. These latter allegations of negligence against Langholf, an Illinois resident prior to his death, and Howe, an Illinois-based company, give Illinois a local interest in the case. See *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 134 (finding that allegations of "inadequate policies, procedures, and training" of a local company give that locality an interest in the case). While the location of the accident occurred in Iowa, there are nevertheless Illinois connections to the litigation, such that Illinois does have an interest in deciding the case, as the circuit court concluded.

¶ 56    The second public interest factor is the unfairness of imposing the burden of jury duty on residents of a forum with little connection to the litigation. As the case does have some connection to Illinois, it would not be unfair to impose the burden of jury duty on residents of Illinois, as the circuit court found. See *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 892 (2008) (observing that, where a locality has an interest in deciding a controversy, "[i]t thus follows that jurors residing in [that locality] have an interest in hearing and resolving such a claim").

¶ 57    Next, we address the final public interest factor—the administrative difficulties caused by adding litigation to already congested court dockets rather than resolving the case at its origin. Although the circuit court agreed with Howe that Poweshiek County's court system is less congested than Cook County's, this is true based on the sheer volume of cases. But Howe did not present any evidence that the Poweshiek County's court system would resolve the case more quickly than Cook County's. See *Guerine*, 198 Ill. 2d at 517 ("Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly.") Yet, the circuit "court is in the better position to assess the burdens on its

own docket" when deciding a *forum non conveniens* motion. *Langenhorst*, 219 Ill. 2d at 451. As the circuit court found that court congestion favored dismissal, we have no basis to find the court came to an incorrect conclusion on this factor.

¶ 58                                              3. Overall Balancing

¶ 59    In sum, some of the private interest factors—in particular, those relating to the availability of compulsory process to secure the attendance of unwilling witnesses and the costs to secure the attendance of willing witnesses—favor Iowa as the more convenient forum for this litigation. However, this is negated by the fact that the relative ease of access to testimonial evidence did not favor dismissal and the case would have to start anew in Iowa, resulting in the private interest factors as a whole not favoring dismissal. Furthermore, as the circuit court found, Illinois does have a significant connection to this litigation through the allegations of negligence against Howe and Langholf that occurred in Illinois, which, in turn, does not impose an unfair burden of jury duty on residents of Illinois, here those residents in Cook County. Given this, even when considering that the relative court congestion between Cook County and Poweshiek County favored dismissal, the public interest factors as a whole do not favor dismissal. Because the private interest factors and public interest factors as a whole do not favor dismissal, the circuit court did not abuse its discretion by denying Howe's motion to dismiss based on *forum non conveniens*.

¶ 60                                       B. Motion to Reopen Discovery

¶ 61    Howe next contends that the circuit court erred by denying its motion to reopen discovery to allow it to redepose plaintiff on the issue of damages. In support of this argument, Howe argues that this court did not limit the remand for a new trial on only the issue of liability and, thus, the damages were still relevant in a new trial. In denying Howe's motion, the circuit court found that reopening discovery was not appropriate in light of the appellate court mandate and further that

any decision about whether the damages would be at issue at the new trial was reserved for the trial judge. However, later, when considering plaintiff's motion for summary judgment, the court decided that damages were not at issue at the new trial.

¶ 62    The circuit court enjoys broad discretion in determining whether to reopen discovery, and such a decision will not be reversed absent an abuse of that discretion. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 19. An abuse of discretion occurs only "where no reasonable person would take the view adopted by the circuit court." *Fennell*, 2012 IL 113812, ¶ 21. In the instant case, the court exercised its discretion to deny Howe its motion to reopen discovery based on its interpretation of the appellate court mandate. When determining how to proceed on remand, the circuit court must review "the appellate court's mandate, as opposed to the appellate court opinion." *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308 (1981). "However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant." *Id.*

¶ 63    The appellate court mandate in this case stated: "Affirmed in part and reversed in part; cause remanded with directions." *Inman*, 2019 IL App (1st) 172459, ¶ 174. Given the mandate's explicit instruction that the remand was "with directions," the content of the opinion is undoubtedly significant. In several parts of that opinion, we made clear that, had the jury been able to consider Green's observation of Terrell being shirtless just seconds before the accident, such evidence probably would have affected the jury's apportionment of fault. For instance, in the introduction of the case, we observed that such evidence "very likely would have changed the jury's apportionment of liability between Howe and Hiner." *Id.* ¶ 4. Furthermore, in the analysis of the propriety of the trial judge's grant of plaintiff's motion *in limine* No. 32, we asserted that "[t]he preclusion of Green's testimony about Terrell's appearance before the accident had a potentially

dramatic [e]ffect on the jury's verdict, specifically its apportionment of fault." *Id.* ¶ 158. And, in concluding that analysis, we stated that "the jury was deprived of a potentially critical piece of evidence in determining the respective faults of Howe and Hiner" and "[t]he jury's inability to consider this significant piece of evidence undoubtedly appears to have affected the outcome of the trial, specifically the comparative fault of Howe and Hiner." *Id.* Given this language in our opinion, it is clear that our mandate for a new trial was only on the issue of liability, not on the issue of damages. Indeed, Howe never raised the issue of damages on appeal, and this court axiomatically never considered the issue. Thus, our mandate could not encompass a remand for a new trial on the issue of damages. See *Crim*, 2020 IL 124318, ¶ 40 ("[T]he appellate court's mandate could not remand the matter for a new trial on an issue never raised and not considered."). Consequently, the circuit court correctly interpreted the appellate court mandate, and therefore, it properly exercised its discretion to deny Howe's motion to reopen discovery.

¶ 64                                  C. Motion for Summary Judgment

¶ 65    Howe next contends that the circuit court erred in granting plaintiff's motion for summary judgment. Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. In determining whether a genuine issue of material fact exists, the court strictly construes the pleadings, depositions, and affidavits against the moving party and liberally construes them in favor of the nonmoving party. *Carney*, 2016 IL 118984, ¶ 25. A genuine issue of material fact exists "where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed

facts." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. We review summary judgment rulings *de novo*. *Carney*, 2016 IL 118984, ¶ 25.

¶ 66 Critical to analyzing the circuit court's grant of summary judgment are multiple statutes. First,

> "[t]he Contribution Act creates a statutory right of contribution in actions 'where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death' [citation], to the extent that a tortfeasor pays more than his *pro rata* share of the common liability [citation]." *Johnson v. United Airlines*, 203 Ill. 2d 121, 128 (2003) (quoting 740 ILCS 100/1, 2(a), 2(b) (West 1996)).

However, section 2(c) of the Contribution Act provides that

> "[w]hen a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 2010).

If a tortfeasor settles with a claimant under section 2(c) of the Contribution Act, the settling tortfeasor becomes "discharged from all liability for any contribution to any other tortfeasor." *Id.* § 2(d). As such, "a defendant who enters a good-faith settlement with the plaintiff is discharged from any contribution liability to a nonsettling defendant." *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 365 (2005). Moreover, under section 2-1117 of the Code (735 ILCS 5/2-1117 (West 2010)), settling defendants cannot be apportioned fault and, thus, cannot appear

on the verdict form for allocating liability. See *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 382 (2008) (*Ready I*) (plurality opinion).

¶ 67    Another critical statute is section 2-1202 of the Code (735 ILCS 5/2-1202 (West 2010)), which governs posttrial motions in jury cases. *Crim*, 2020 IL 124318, ¶ 25. Under section 2-1202(b) (735 ILCS 5/2-1202(b) (West 2010)), "[r]elief desired after trial in jury cases, *** must be sought in a single post-trial motion." Furthermore, section 2-1202 requires that such posttrial motions be filed within 30 days after the entry of the judgment and "contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired." *Id.* § 2-1202(b), (c). If a party "fails to seek a new trial in his or her post-trial motion, either conditionally or unconditionally," that party forfeits "the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict." *Id.* § 2-1202(e). There are two exceptions to this requirement. *Crim*, 2020 IL 124318, ¶ 26. The first exception is, as provided by the statute, when the jury fails to reach a verdict. *Id.* The second exception occurs in cases where the circuit court grants a directed verdict on all issues of the case. *Id.*

¶ 68    In *Crim*, two plaintiffs filed a medical malpractice lawsuit against a doctor on behalf of their son raising two claims: one for failing to obtain informed consent before birth and the other for professional negligence relating to the delivery. *Id.* ¶ 4. The case proceed to a jury trial, where, during the trial, the trial court granted the doctor's motion for a directed verdict on the informed consent claim. *Id.* ¶ 7. Following the trial, the jury found in favor of the doctor on the professional negligence claim. *Id.* The plaintiffs did not file any posttrial motions, but they did appeal, contending the trial court erred in granting the doctor's motion for a directed verdict on the informed consent claim, without presenting any argument concerning the jury's verdict on the

professional negligence claim. *Id.* ¶¶ 8-9. The appellate court reversed the trial court's grant of a directed verdict on the informed consent claim and remanded the matter for a new trial. *Id.* ¶ 11.

¶ 69     On remand, the parties disagreed on the scope of the retrial, with the doctor arguing that the remand only concerned the informed consent claim, while the plaintiffs argued that a retrial was required on all issues. *Id.* ¶¶ 12-13. The trial court invited the parties to propose a certified question, which they did, and the court subsequently certified: " 'Whether the ruling of the Appellate Court [citation], reversing the judgment and remanding this case for a new trial requires a trial *de novo* on all claims.' " *Id.* ¶ 14. The appellate court granted the doctor's application for an interlocutory appeal, and it answered the question in the affirmative because the appellate court in *Crim v. Dietrich*, 2016 IL App (4th) 150843, issued a general remand without specific instructions. *Id.* ¶¶ 15, 22. The doctor subsequently petitioned our supreme court for review, which it granted. *Id.* ¶ 15. Initially, our supreme court found that the plaintiffs were not entitled to a new trial on the professional negligence claim—the sole claim on which the jury rendered a verdict—because they failed to file a posttrial motion as required by section 2-1202 of the Code. *Id.* ¶ 33. Our supreme court also rejected an argument made by the plaintiffs that, because the appellate court in *Crim* issued a general remand, they were entitled to a new trial on all issues automatically. *Id.* ¶ 40. In rejecting this argument, our supreme court observed that, when the appellate court in *Crim* held that the circuit court erred in granting the doctor's motion for a directed verdict on the informed consent claim, the appellate court only "ruled on the merits of the case before it." *Id.* As such, according to our supreme court, "the appellate court's mandate could not remand the matter for a new trial on an issue never raised and not considered." *Id.*

¶ 70     Under this body of law, we note there are certain facts that are not in dispute. First, in our original opinion, we affirmed the jury's finding that Howe was a proximate cause of Inman's

injuries and death. See *Inman*, 2019 IL App (1st) 172459, ¶ 82. Second, Hiner Transport is no longer involved in the case because of the good faith settlement it reached with plaintiff and subsequent dismissal from the case by the trial judge. Third, although Howe objected to the settlement, it never raised an issue about the settlement in its posttrial motion or challenged the settlement on appeal, thereby forfeiting its challenge to it. See 735 ILCS 5/2-1202 (West 2010); *Crim*, 2020 IL 124318, ¶¶ 24-25, 33, 38. Fourth, Howe never challenged the jury's damages award, either in its posttrial motion or on appeal, thereby forfeiting its right to request a new trial on the issue of damages. See *Crim*, 2020 IL 124318, ¶¶ 24-25, 33, 38. Given these facts, as the circuit court correctly observed in its analysis on plaintiff's motion for summary judgment, the only issue to be decided at a new trial is how to allocate liability given the new testimony of Green and the application of the amended discovery sanctions. But because of Hiner Transport's good faith settlement and subsequent dismissal from the litigation, Hiner Transport would not be a party at the retrial. And, under *Ready I*, 232 Ill. 2d at 382, Hiner Transport cannot be listed on the verdict form. As a result, the only party who could be liable at retrial would be Howe (see 740 ILCS 100/2 (West 2010)), and therefore, it has to bear the entirety of the judgment, as the circuit court concluded.

¶ 71    Nevertheless, generally, a defendant such as Howe would be allowed to use a sole proximate cause defense and argue that a third party was the sole proximate cause of another's injuries and death. " '[T]he plaintiff exclusively bears the burden of proof to establish the element of causation through competent evidence ***.' " *Ready v. United/Goedecke Services, Inc.*, 238 Ill. 2d 582, 591 (2010) (*Ready II*) (quoting *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 444 (2009)). But " 'a defendant has the right to rebut such evidence and to also establish that the conduct of another causative factor is the sole proximate cause of the injury.' " *Id.* In this case, however, such a

defense is impossible. For one, Howe cannot place blame upon Hiner Transport because it has been dismissed from the litigation due to the good-faith settlement with plaintiff. See *Ready I*, 232 Ill. 2d at 382. Second, we have affirmed the jury's finding that Howe was a proximate cause of Inman's injuries and death. See *Inman*, 2019 IL App (1st) 172459, ¶ 82. What this leaves, as the circuit court concluded, is a situation where it had no option but to grant plaintiff's motion for summary judgment, as no genuine issue of material fact exists as to who could be 100% liable at a retrial. See *Ready II*, 238 Ill. 2d at 594 (finding that "[n]o reasonable jury would have concluded that United was not a proximate cause of the accident, and if United was a proximate cause, the settling defendants could not have been the sole proximate cause"). Consequently, the circuit court correctly determined that plaintiff was entitled to summary judgment.

¶ 72                    D. Motion to Release Appeal Bond

¶ 73    Howe next contends that the circuit court erred in denying its motion to release the appeal bond following the appellate court remand for a new trial. Under Illinois Supreme Court Rule 305(a) (eff. July 1, 2017), a party may obtain a stay of enforcement of an adverse judgment if that party timely files a notice of appeal and posts a bond with the circuit court. The appeal bond generally must be sufficient monetarily "to cover the amount of the judgment and costs plus interest reasonably anticipated to accrue during the pendency of the appeal." *Id.* An appeal bond secures the appellee's judgment while the appellant pursues its appeal. See *Rhodes v. Sigler*, 44 Ill. App. 3d 375, 378-79 (1976). Additionally, the bond prevents the appellee from executing on his or her judgment during the pendency of the appeal. Ill. S. Ct. R. 305(a) (eff. July 1, 2017).

¶ 74    Howe initially procured an appeal bond through Western Surety Company that became effective on October 2, 2017, and secured plaintiff's judgment while Howe appealed. Ultimately, after the initial appeal, our remand for a new trial, Howe's unsuccessful motion to release the

appeal bond, its unsuccessful *forum non conveniens* motion, and plaintiff's successful motion for summary judgment, Howe filed a motion to continue the stay of enforcement of the bonded judgment based on the previously approved appeal bond. Therein, Howe posited that the original appeal bond was more than sufficient security for the judgment entered by the circuit court on plaintiff's motion for summary judgment. As such, Howe requested that the original appeal bond remain in place through the exhaustion of all its appeals. The circuit court granted Howe's motion to continue the stay of enforcement of the judgment, meaning the appeal bond remains in effect based on its request. As such, this issue has become moot. See *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006).

¶ 75                                                    E. Postjudgment Interest

¶ 76     Howe lastly contends that the circuit court erred in awarding plaintiff postjudgment interest from May 18, 2017, the date that the trial judge entered judgment on the jury's verdict. Rather, according to Howe, postjudgment interest could only begin to accrue on February 11, 2021, the date that the circuit court entered judgment on plaintiff's motion for summary judgment.

¶ 77     In Illinois, judgment creditors are entitled to 9% interest per annum on unpaid portions of a judgment. 735 ILCS 5/2-1303 (West 2010). The circuit court has no discretion in awarding interest; rather, the court is required to award interest on a judgment. *Longo v. Globe Auto Recycling, Inc.*, 318 Ill. App. 3d 1028, 1039 (2001). The only way the judgment debtor may stop the accrual of interest is by tendering payment of the judgment, costs, and the interest accrued to date, "notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment." 735 ILCS 5/2-1303 (West 2010). "An award of interest on a money judgment requires that the amount of money to be paid was certain and the judgment debtor enjoyed the improper use of the money during the period for which interest is to be awarded." *Browning, Ektelon*

*Division v. Williams*, 348 Ill. App. 3d 830, 833 (2004). If the damages are certain, then interest begins to accrue at the time the court enters the original judgment. See *Kramer v. Mount Carmel Shelter Care Facility, Inc.*, 322 Ill. App. 3d 389, 393 (2001) (interest accrued at time of original judgment where damages remained definite and certain). However, if the damages are uncertain at the time of the original judgment, then interest begins to accrue at the time the court enters a subsequent judgment. See *Poe v. Industrial Comm'n*, 230 Ill. App. 3d 1, 8-9 (1992) (interest accrued at time of new judgment where no definite amount of damages had been set previously). The date from which interest begins to accrue depends on the unique circumstances of each case (*Kramer*, 322 Ill. App. 3d at 392) and is a question of law that we review *de novo*. *Decker v. St. Mary's Hospital*, 266 Ill. App. 3d 523, 525 (1994), *overruled on other grounds by Star Charters v. Figueroa*, 192 Ill. 2d 47 (2000).

¶ 78    Before trial, based on plaintiff and the Hiner entities' high-low settlement, the motion judge found that the settlement was negotiated in good faith and ordered that any and all counterclaims for contribution between the Hiner entities and Howe be dismissed with prejudice pursuant to Contribution Act. Once the motion judge found as such, the amount of liability for the Hiner entities became capped. As a result, when the jury reached its verdict and awarded plaintiff damages, Howe knew that it would bear the full amount of the damages award less the setoff from plaintiff and the Hiner entities' settlement. Therefore, the damages were certain from the time the trial judge entered judgment in accordance with the jury's verdict. Nothing about our findings on appeal, our remand, or the circuit court's subsequent grant of summary judgment on remand changed the amount of damages for which Howe was liable. Consequently, the circuit court properly found that postjudgment interest began to accrue on the date of the original judgment in May 2017.

¶ 79                                    III. CONCLUSION

¶ 80    For the foregoing reasons, we affirm the judgments of circuit court of Cook County.

¶ 81    Affirmed.

**No. 1-21-0274**

| | |
|---|---|
| **Cite as:** | *Inman v. Howe Freightways, Inc.*, 2022 IL App (1st) 210274 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-13312; the Hon. James N. O'Hara, Judge, presiding. |
| **Attorneys for Appellant:** | Michael Resis, Andrew Seiber, and Ellen Green, of SmithAmundsen LLC, and Glenn F. Fencl and David M. Macksey, of Johnson & Bell Ltd., both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Joseph A. Power Jr., Robert R. Thomas, and Sean M. Houlihan, of Power Rogers, LLP, of Chicago, and Michael T. Reagan, of Ottawa, for appellee. |