2023 IL App (3d) 220360

Opinion filed August 16, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| PAUL ALAN LARSON and CYNTHIA | ) | Appeal from the Circuit Court |
|---|---|---|
| LARSON, Individually and Next Best Friends | ) | of the 12th Judicial Circuit, |
| of B.L., a Minor, | ) | Will County, Illinois, |
| | ) | |
| Plaintiffs-Appellees, | ) | Appeal No. 3-22-0360 |
| | ) | Circuit No. 22-LA-75 |
| v. | ) | |
| | ) | |
| ILLINOIS CENTRAL SCHOOL BUS, LLC, | ) | Honorable |
| | ) | Roger D. Rickmon, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Brennan and Davenport concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The plaintiffs, Paul Alan Larson and Cynthia Larson, individually and next best friends of

B.L., a minor, filed a complaint founded in negligence against the defendant, Illinois Central

School Bus, LLC, an Illinois limited liability company with its principal place of business in Will

County, for an incident that occurred in Denton County, Texas. The defendant filed a motion to

dismiss pursuant to the doctrine of *forum non conveniens*, which the circuit court denied. The

defendant filed this interlocutory appeal, which this court allowed.

¶ 2                                I. BACKGROUND

## A. The Complaint

The plaintiffs filed a complaint founded in negligence against the defendant. The complaint set forth the following allegations. On the morning of March 22, 2021, a driver and aide, who were employees of the defendant, picked up B.L. at his home in Denton County, Texas, to transport him to school. B.L. is a mentally and physically disabled minor. The driver and aide loaded B.L. in his wheelchair onto the bus and improperly secured the wheelchair. Shortly thereafter, as the bus was turning, B.L.'s wheelchair turned over, causing him to hit his head and land on his right side. As a result of the fall, B.L. sustained a concussion and a fractured right elbow. The plaintiffs alleged the defendant and its agents were guilty of the following acts or omissions: failing to implement policies and procedures pertaining to safely transporting children (such as B.L.), failing to properly train drivers and aides regarding properly and safely securing wheelchairs into its buses, failing to properly secure B.L.'s wheelchair into the bus, failing to adequately inspect the manner in which B.L.'s wheelchair was secured to the bus, failing to correct the dangerous condition created by improperly securing B.L.'s wheelchair, failing to properly monitor B.L. and his wheelchair during the ride to school, creating a dangerous condition on the school bus, and failing to act as a reasonably prudent owner and/or operator who transports minor disabled children in wheelchairs.

## B. *Forum Non Conveniens*

The defendant filed its answer and a motion to dismiss pursuant to the doctrine of *forum non conveniens*. The defendant argued that the lawsuit should be dismissed and filed in Texas because (1) the incident occurred in Denton County, Texas; (2) nearly all of the occurrence witnesses and documentary evidence were in Texas; (3) the entirety of the post-accident investigation and nearly all of B.L.'s post-accident medical treatment occurred in Texas; (4) none of the investigators, post-accident medical providers, or witnesses were amenable to process by an

Illinois court; (5) it would be costly and inconvenient to secure the attendance of willing witnesses that are principally located in Texas; and (6) Denton County's docket was significantly less congested than Will County's docket.

¶ 7    The defendant set forth four categories of witnesses: (1) the plaintiffs, who resided in Texas with B.L. and their three other children; (2) employee witnesses located in Texas, such as the bus driver and aide, the bus driver's immediate supervisor, the dispatcher, and managers who conducted a post-incident investigation (some of these employee witnesses were employed at the time of the incident but were no longer employees at the time the case was filed); (3) post-occurrence witnesses from B.L.'s school who were present at the scene after the incident, which included the assistant principal, a nurse, the resources officer, and a teacher, who all resided in Texas; and (4) 13 medical witnesses who treated B.L., 11 of which were located in Texas, 1 in Virginia (which may have just been a supplies provider), and 1 in Utah.

¶ 8    The defendant included an affidavit of Richard Price, its director of safety, training, and risk management. He stated that he was familiar with the incident involving B.L. The bus driver, aide, dispatcher, and supervisors who investigated the incident resided in Texas. The bus driver and aide received orientation at the defendant's Denton facility in Lewisville, Texas. The bus driver and aide's physical employment and training records were maintained at the Denton facility and were maintained on its online repository accessible throughout the United States. He also noted that, for at least one year before and after the incident, the bus involved was regularly inspected and maintained at the defendant's Denton facility, which also maintained those records.

¶ 9    The plaintiffs responded to the defendant's motion, arguing that the court should deny it because (1) there were material witnesses in Will County and states other than Texas; (2) the defendant failed to show that Denton County was a more convenient forum for both parties;

(3) Will County had a substantial interest in this controversy because its resident is the sole defendant; (4) the motion failed to meet requirements set forth by the supreme court; and (5) the motion was premature as very limited discovery had taken place. The plaintiffs emphasized that the defendant's headquarters and its directors were located in Will County.

¶ 10                                    C. The Circuit Court's Ruling

¶ 11        The court held a hearing on the motion. First, it addressed the private interest factors. It noted that the defendant had its principal place of business in Will County, so any inconvenience, would be suffered by the plaintiffs who chose this forum. For ease of access to evidence, the court stated there was no problem obtaining document evidence, such as medical records. As to witnesses, the court acknowledged that, while it was true that most of the witnesses were located in Texas, COVID-19 demonstrated that witnesses' testimony both for discovery and trial could be obtained through live video platforms. However, the court said this factor slightly favored dismissal.[1] The court also found that the availability of a compulsory process to compel witnesses to appear would also favor dismissal. The court noted the cost to obtain witnesses in person but stated that most of the defendant's witnesses were in Will County, so that factor was neutral. The court found access to the location of the occurrence for review not to be relevant in a personal injury case. The court stated that all practical considerations did not favor either option.

¶ 12        The court also discussed the public interest factors. It stated that the accident took place in Texas, so there was an interest in having the controversy decided locally, which favored dismissal. As to the unfairness of imposing a burden of jury duty on the residents of Will County, the court

---

[1]The circuit court referred to the motion in this case as a request for a "transfer" rather than a "dismissal." *Forum non conveniens* applies when the alternative forum is another Illinois county (intrastate) and when the forum is outside of Illinois (interstate). Intrastate *forum non conveniens* is granted by transfer order while interstate *forum non conveniens* is granted by dismissal order. To avoid any confusion, we use language relating to a dismissal throughout as we are presented with interstate *forum non conveniens*. See Ill. S. Ct. R. 187(c)(2) (Jan. 1, 2018).

4

highlighted that the defendant was incorporated in Illinois, and Will County residents might want to hear about the incident with alleged negligence in transporting special needs children. Last, the court considered the administrative difficulty. The court stated that 103% of civil cases filed in Denton County were resolved last year compared to 100.6% in Will County, which was a miniscule difference favoring denying the dismissal.

¶ 13    The court stated it considered the factors, gave some deference to the plaintiffs' choice of forum, and denied the motion. The defendant filed an interlocutory appeal by permission pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020), which this court allowed.

¶ 14                                    II. ANALYSIS

¶ 15    The doctrine of *forum non conveniens* assumes that there is more than one forum with the power to hear the case. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 12. Thus, the doctrine allows a court to decline jurisdiction of a case, even though it may have proper jurisdiction over the parties and subject matter, if it appears that another forum can better serve the convenience of the parties and the ends of justice. *Id.* "*Forum non conveniens* is a doctrine that is founded in considerations of fundamental fairness and sensible and effective judicial administration." (Internal quotation marks omitted.) *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991).

¶ 16    When considering a *forum non conveniens* motion, the court balances the relevant public interest and private interest factors. *Tabirta v. Cummings*, 2020 IL 124798, ¶ 18. The court must consider all of the relevant factors, without emphasizing one factor, within the context of the unique facts of the case. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443 (2006). The determination of a *forum non conveniens* motion lies within the sound discretion of the circuit court. *Fennell*, 2012 IL 113812, ¶ 21. This court will only reverse if it can be shown that the circuit court abused its discretion in balancing the relevant factors. *Id.* An abuse of discretion will be

5

found where no reasonable person would take the view adopted by the circuit court. *Id.*

¶ 17                                    A. The Plaintiffs' Choice of Forum

¶ 18        Plaintiffs have a substantial interest in choosing the forum where their rights will be vindicated, and such choice should rarely be distributed unless the other factors strongly favor dismissal. *Langenhorst*, 219 Ill. 2d at 442. However, a plaintiff's interest in choosing the forum receives somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum. *Id.* at 442-43. Here, the circuit court stated that it gave *some* deference to the plaintiffs' choice of forum. The plaintiffs argue the court acted within its discretion by according some deference. We agree.

¶ 19                                    B. Private Interest Factors

¶ 20        The private interest factors include (1) the convenience of the parties; (2) the relative ease of access of sources of testimonial, documentary, and real evidence; (3) the availability of compulsory process to secure attendance of unwilling witnesses; (4) the cost to obtain attendance of willing witnesses; (5) the possibility of viewing the premises, if appropriate; and (6) all other practical considerations that make trial of a case easy, expeditious, and inexpensive. *Fennell*, 2012 IL 113812, ¶ 15.

¶ 21                                    1. *Convenience of the Parties*

¶ 22        The circuit court found that the convenience of the parties favored keeping the case in Will County because the defendant had its principal place of business there and any inconvenience would be suffered by the plaintiffs. First, while the location of the defendant's headquarters is a factor to consider, it is not dispositive. See *Hansen-Runge v. Illinois Central R.R. Co.*, 2020 IL App (1st) 190383, ¶ 32. We must look beyond the criterion of venue because a motion pursuant to the doctrine of *forum non conveniens* already assumes that the court has jurisdiction over the

defendant. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 172-73 (2005). The place of the defendant's residence must be considered along with other connections that exist between the litigation and the chosen forum. *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 376-77 (1982). Second, we do not consider any inconvenience to the plaintiff with respect to their chosen forum. *First American Bank v. Guerine*, 198 Ill. 2d 511, 518 (2002).

¶ 23        As to convenience of the parties, the defendant argues within the context of the potential witnesses in this case. In sum, the defendant argues that its critical witnesses are in Texas (*supra* ¶ 8), while the plaintiffs argue that their critical witnesses are located in Illinois (*supra* ¶ 9). The parties essentially dispute whether the action is primarily about alleged negligence of the defendant's directors in Illinois or the defendant's employees in Texas. The plaintiffs specifically argue the directors' relevance in that they made decisions regarding training and safety policies and practices. The defendant contends this claim, as it relates to its directors, is speculative because there was no evidence indicating that its directors in Illinois could testify as to nationwide safety policies or safety enhancement implementation.[2] See *Hansen-Runge*, 2020 IL App (1st) 190383, ¶¶ 20, 33 (finding that the plaintiff's allegation that decision making at headquarters might have led to his injuries was pure speculation where there was no evidence to support this contention); but see *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 101 (the plaintiff's complaint included a litany of allegations against the defendant's corporate policies and training and described the relevance of corporate personnel who may be called to testify); *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 278-279 (2011) (testimony of corporate officers in Illinois was relevant to injuries that took place in Texas and Arizona because the corporate officers created policies that

---

[2]The parties go so far as to argue the meaning of the word "implement" in the plaintiffs' complaint wherein they alleged that the defendant failed "to implement policies and procedures pertaining to safely transporting children" and whether that applies to the directors. We do not find it necessary to address this contention as it has no bearing on our analysis.

affected working conditions).

¶ 24    Here, the plaintiffs' allegations were directed at the defendant's agents and employees. The complaint did not specifically state that the defendant's directors created or failed to create policies and procedures or that they could testify as to the specific policies in Texas and their implementation. The plaintiffs failed to seek leave for discovery to support their allegation of corporate decision making, which was allowed per Illinois Supreme Court Rule 187(b) (eff. Jan. 1, 2018). On the other hand, the affidavit of the defendant's director of safety, training, and risk Management did not state that he could not provide testimony relating to these policies and procedures. Instead, he provided the location of where the incident and training occurred, where the records were maintained, and where the bus was maintained. Regardless, even if we assume the allegations as to the defendant's directors were sufficient, the convenience of the parties still lends toward dismissal. Further, even if the case comes down to the defendant's corporate policies, the importance of the Texas witnesses (incident, post-incident, and medical) is irrefutable in a negligence case. Thus, Texas is the convenient forum despite the defendant's two named directors at its headquarters located in Will County.

¶ 25                    2. *Ease of Access to Evidence*

¶ 26    We next consider ease of access to sources of testimonial, documentary, and real evidence. The circuit court found there was no issue with obtaining documentary evidence, such as medical records. It is true that the location of relevant documents deserves little weight when these documents can be copied and sent relatively easily and inexpensively. *Fennell*, 2012 IL 113812, ¶ 36. The court also found that recent history demonstrated that witness testimony can be obtained through live video platforms. However, the court still found that ease of access to evidence slightly favored dismissal as most of the witnesses were in Texas.

¶ 27    The defendant argues that the court in effect improperly eliminated access to testimonial evidence as a private interest factor. The defendant explains, that while electronic documents may be an adequate substitute for paper records, Illinois courts have long recognized there is no adequate substitute for live testimony in court at trial. We agree with the defendant that remote testimony is not the norm, but rather, the exception.[3] Here, the vast majority of witnesses are located in Texas, and the ease of access to these individuals lends to Denton County instead of Will County (approximately 900 miles away). We also note none of B.L.'s medical treatment occurred in Illinois. Thus, as the circuit court found, ease of access to evidence favors dismissal.

¶ 28                         3. *Availability of Compulsory Process*

¶ 29    The next factor is the availability of compulsory process to secure attendance of unwilling witnesses. Here, the court found this factor favored dismissal. We agree. The plaintiffs disagree and argue this factor is neutral because, where a defendant's employees reside in both states, one forum is not favored over another (citing *Koss*, 2012 IL App (1st) 120379, ¶ 127). However, this argument oversimplifies the witnesses in this case. The two directors, the only witnesses named by the plaintiffs in Will County, are available as employees of the defendant regardless of whether the case is tried in Illinois or Texas. See *Illinois Tool Works, Inc. v. Sierracin Corp.*, 134 Ill. App. 3d 63, 68 (1985); *W.R. Grace & Co. v. Beker Industries, Inc.*, 128 Ill. App. 3d 215, 221 (1984). The same cannot be said for the witnesses that are no longer employees of the defendant and the majority of witnesses who reside in Texas. See *Gridley*, 217 Ill. 2d at 174 (Illinois courts do not have subpoena power in other states).

---

[3]During the pendency of this appeal, Illinois Supreme Court Rules 45 and 241 were amended, which permit remote testimony where good cause is shown and prior approval is obtained from the judge presiding over the matter and appropriate safeguards are in place. Ill. S. Ct. R. 45(c) (eff. Jan. 1, 2023); R. 241(a), (b) (eff. Feb. 2, 2023). The committee comments to Rule 241 reaffirms the significance of in-person testimony: "[t]he presentation of in-person testimony remains of utmost importance in trials and evidentiary hearings described in Rule 45(c)(1)." Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023).

¶ 30                    4. *Cost to Obtain Attendance of Willing Witnesses*

¶ 31          We also consider the cost to obtain attendance of willing witnesses. The court noted the cost to obtain witnesses in person, but found the factor to be neutral, as most of the defendant's witnesses were in Will County. It is unclear why the court focused on the two directors without considering the vast majority of witnesses that are in Texas, such as the bus driver, aide, dispatcher, school employees, the plaintiffs, B.L., B.L.'s caretakers, and 11 of 13 medical providers who treated B.L. The cost of obtaining the Texas witnesses would be significant where the witnesses would need to travel extensively. See *Hansen-Runge*, 2020 IL App (1st) 190383, ¶ 29. Therefore, unlike the circuit court, we find this factor is not neutral and favors dismissal.

¶ 32                      5. *Possibility of Viewing the Premises*

¶ 33          Another private interest factor is the possibility of viewing the premises, if appropriate. The possibility of having a jury view the scene of an accident is an important consideration when ruling on a *forum non conveniens* motion. *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 77 (1983). Our supreme court emphasized that this factor is concerned with the *possibility* of viewing the site of injury and not the *necessity* of viewing the site. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 178 (2003). Here, the court found that access to the location of the occurrence for review was not relevant in a personal injury case.

¶ 34          The defendant argues that, to the extent the mechanism of the left turn that caused B.L.'s wheelchair to turn over becomes an issue, the street on which the turn occurred is located in Texas, and it would be inconvenient for a Will County jury to travel hundreds of miles to view it. The defendant also argues that the bus is located in Texas and the jury's ability to see the area where B.L. was secured to the bus, and the restraints, may be beneficial given the plaintiffs' allegations that the defendant failed to properly secure the wheelchair, inspect the manner in which it was

10

secured, and correct the allegedly dangerous condition. The plaintiffs argue that (1) the defendant failed to articulate how a site visit would be relevant as no party pled that the condition of the roadway on which the bus was traveling was a factor in the wheelchair turning over and (2) viewing the bus was not practical as it continued to be used after the incident and its ongoing usage changed its condition. The plaintiffs instead suggest that other forms of evidence, such as video and photos "likely" taken during the investigation, are more probative.

¶ 35    We first disagree with the circuit court's conclusion that access to the location of the occurrence for viewing was not relevant in a personal injury case. Instead, the importance of viewing the premises turns on the facts of the case and the allegations giving rise to the cause of action. See *Hackl v. Advocate Health & Hospitals Corp.*, 382 Ill. App. 3d 442, 451-52 (2008) (viewing of the site is rarely or never called for in medical negligence cases); see also *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 891 (2008) (the importance of the factor of a jury possibly viewing the site is diminished where the case primarily concerns a products liability claim because it is generally not necessary in such cases).

¶ 36    In accidents involving vehicles, jurors may need to view the accident site to observe road crossings, signs, and sight lines from the perspective of the parties. See *Blake v. Colfax Corp.*, 2013 IL App (1st) 122987, ¶¶ 22-23. Here, there are not the same concerns with viewing the specific road where the injury occurred to enhance a jury's understanding. See *id.* The defendant also stated that viewing the actual bus was a *possibility* based on the allegations in this case. However, this argument shifts from viewing a *premises* to viewing a motor vehicle, which is classified as real evidence and should have been couched within its argument for ease of access to evidence. *Smith v. Jewel Food Stores, Inc.*, 374 Ill. App. 3d 31, 36 (2007) (a wrecked truck was classified as real evidence and went to the factor concerning ease of access to evidence rather than

11

possibility of viewing the premises). The plaintiffs also suggest that any viewing can be accomplished with video and photos "likely" taken from the inspection. This is speculative as there is no definitive assertion such exists. Based on the foregoing, we find this factor to be neutral.

¶ 37                                    6. *Practical Considerations*

¶ 38        The last private interest factor is the practical considerations that make trial easy, expeditious, and inexpensive. *Dawdy*, 207 Ill. 2d at 172. The court in this case found that practical considerations favored neither party. Practical considerations consist of factors previously analyzed, such as the availability of the compulsory process to secure the attendance of unwilling witnesses, the cost to obtain attendance of willing witnesses, and the ability to view the premises (if appropriate). *First American Bank*, 198 Ill. 2d at 516. As we already found that two of those factors favor dismissal and one was neutral, the practical considerations also favor dismissal. Neither the defendant nor the plaintiffs specifically argue any other practical considerations.

¶ 39                                    C. Public Interest Factors

¶ 40        We next consider the public interest factors: (1) the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin, (2) the unfairness of imposing jury duty upon residents of a community with no connection to the litigation, and (3) the interest in having local controversies decided locally. *Fennell*, 2012 IL 113812, ¶ 16.

¶ 41                                    1. *Administrative Difficulties*

¶ 42        As to administrative difficulties, the circuit court found that 103% of civil cases filed in Denton County were resolved last year compared to 100.6% in Will County, which was a miniscule difference that favored denying the dismissal. The defendant argues, as the difference between the two counties was so small, the factor should have been found to be neutral rather than favoring denying the dismissal. We agree and find that this factor is neutral.

12

¶ 43                              2. *Unfairness of Imposing Jury Duty*

¶ 44        The circuit court also addressed the unfairness of imposing a burden of jury duty on the residents of Will County. It stated that the defendant was incorporated in Illinois and Will County residents might want to hear about the incident with alleged negligence in transporting special needs children. Therefore, it appears the court found that this factor favored denying the dismissal.

¶ 45        The defendant argues that, although the case may be interesting, the location of its headquarters in Will County was not enough to justify the expense and burden of a jury on Will County residents and its judicial system where the alleged negligence and injuries took place in Texas. See *Skidmore v. Gateway Western Ry. Co.*, 366 Ill. App. 3d 238, 241-42 (2006) (Illinois had no interest in being burdened by litigation concerning an automobile accident that occurred in Missouri and involved Missouri residents just because the defendant's home office was in Illinois). The plaintiffs argue that the residents of Will County have an interest in ensuring local school bus companies comply with applicable laws and hire and train safe drivers who do not endanger children on school buses. See *Koss*, 2012 IL App (1st) 120379, ¶ 134 (a forum has an interest in ensuring the quality of services offered by a corporation headquartered in that forum). Based on the allegations in the complaint, we agree with both parties and find that it would not be unfair to impose jury duty in either forum. Therefore, this factor is neutral.

¶ 46                     3. *Interest in Having Local Controversies Decided Locally*

¶ 47        Last, the circuit court also considered the factor of interest in having local controversies decided locally. It stated that the accident took place in Texas, so there was an interest in having the controversy decided there, which favored dismissal. The parties again argue whether the case is about corporate decision-making at headquarters or where the physical injury occurred. A state has a decided interest in adjudicating cases alleging injuries that occurred within its borders. *Wilder*

13

*Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶ 66. The majority of the plaintiffs' allegations in this case centered around actions taken in Texas, where B.L. was injured. *Supra* ¶ 4. Thus, we agree with the circuit court that this factor favors dismissal.

¶ 48                                      D. Balancing the Factors

¶ 49        "*Forum non conveniens* is a flexible doctrine requiring evaluation of the total circumstances rather than consideration of any single factor." *Gridley*, 217 Ill. 2d at 169. We consider all factors as a whole, without emphasizing one single factor, and do not weigh the private interest factors against the public interest factors. *Fennell*, 2012 IL 113812, ¶ 17. We consider the unique facts of each case. *Langenhorst*, 219 Ill. 2d at 443. The proper determination is whether the balance of factors strongly favors dismissal. *Gridley*, 217 Ill. 2d at 170.

¶ 50        Based on the foregoing analysis as to each individual factor, we find that the circuit court abused its discretion when it denied the defendant's motion to dismiss. Aside from the plaintiffs' choice of forum, each factor either favored dismissal or was neutral. Accordingly, the balance of factors strongly favored dismissal. We reverse the circuit court's judgment and remand with directions for the court to dismiss the action. See Ill. S. Ct. R. 187(c)(2) (eff. Jan. 1, 2018).

¶ 51                                      III. CONCLUSION

¶ 52        For these reasons, the judgment of the circuit court of Will County is reversed, and the cause is remanded to the circuit court with directions to dismiss the action in accordance with Illinois Supreme Court Rule 187(c)(2) (Jan. 1, 2018).

¶ 53        Reversed and remanded with directions.

*Larson v. Illinois Central School Bus, LLC*, 2023 IL App (3d) 220360

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 22-LA-75; the Hon. Roger D. Rickmon, Judge, presiding. |
| **Attorneys for Appellant:** | Lew R.C. Bricker, David Sethi, Ellen L. Green, and Michael Resis, of Amundsen Davis, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Thomas Manzella, of Block Klukas Manzella & Shell, P.C., and Pamela Davis Gorocowski, of KGG, LLC, both of Joliet, and Andrew L. Payne, Cindra M. Doud, and Payne Mitchell Ramsey, of Dallas Texas, for appellees. |