NOTICE
This Order was filed under Supreme
Court Rule 23 and is not precedent
except in the limited circumstances
allowed under Rule 23(e)(1).

2023 IL App (4th) 230431-U

NO. 4-23-0431

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 19, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| HAROLD PERRY and JOSEPHINE ROSS-PUHALLA, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellees, | ) | Peoria County |
| v. | ) | No. 23LA32 |
| IAN R. COLSON, | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Frank W. Ierulli, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court concluded that the trial court erred by denying defendant's motion to dismiss pursuant to the doctrine of *forum non conveniens*.

¶ 2   In February 2023, plaintiffs, Harold Perry and Josephine Ross-Puhalla, filed a complaint in Peoria County, Illinois, against defendant, Ian R. Colson, alleging Colson injured Perry in a car accident that occurred in St. Louis County, Missouri, in December 2022.

¶ 3   In March 2023, Colson, a resident of Peoria, filed a motion to dismiss for *forum non conveniens*, asserting St. Louis County was a more convenient location for litigation because (1) plaintiffs resided there, (2) the accident occurred there, and (3) Perry received medical care there. Following an April 2023 hearing, the trial court denied Colson's motion.

¶ 4   Colson appeals, arguing the trial court abused its discretion by denying his motion to dismiss pursuant to the doctrine of *forum non conveniens*. We agree and reverse.

¶ 5                              I. BACKGROUND

¶ 6                                    A. The Complaint

¶ 7          In February 2023, Perry and his spouse, Ross-Puhalla, filed a two-count complaint in Peoria County against Colson, asserting claims of negligence and loss of consortium. Perry and Ross-Puhalla resided in St. Louis County, while Colson resided in Peoria County. The complaint alleged, "Illinois Rules of Civil Procedure and Illinois Rules of Evidence govern in this instant action against the Defendant. Missouri substantive law governs Plaintiff's claim against Defendant as his alleged negligent conduct occurred in the State of Missouri."

¶ 8          The complaint alleged that on December 23, 2022, at 10:58 a.m., Perry was driving his Toyota sport utility vehicle (SUV) northbound on Interstate 270 in St. Louis County. The complaint further alleged that at that same time, Colson was also driving northbound on Interstate 270 in his Chevrolet pickup truck when Colson "attempted to avoid a truck and trailer [and] traveled into the embankment and then into the lane of travel reserved for [Perry's] motor vehicle and struck [Perry's] motor vehicle." After striking Perry's SUV, Colson traveled across the roadway and struck a Ford pickup truck driven by Candice Randolph. Perry "suffered serious injuries and damages" as a result of the accident.

¶ 9          In the negligence count, the complaint alleged that Colson owed Perry a duty of care to keep control of his vehicle and exercise reasonable care to avoid a collision on the roadway. The complaint alleged Colson breached his duty of care by, among other things, (1) failing to keep a lookout, (2) failing to keep his vehicle in its designated lane of traffic, (3) driving at an excessive speed for the road conditions, (4) speeding, and (5) driving while using a cell phone. The complaint asserted, "Pursuant to Missouri law [Colson] had the duty to exercise the 'high degree of care' meaning that degree of care that a very careful person would use under the same or similar circumstances relating to the operation of his motor vehicle as alleged herein." The complaint then

- 2 -

cited several Missouri statutes governing the operation of motor vehicles.

¶ 10    The complaint further alleged that, as a result of Colson's breach of duty, Perry suffered injuries to his head, back, spine, brain, hip, wrist, and hand that required him to undergo surgery. The complaint also alleged that Perry was expected to need further surgeries in the future. The complaint sought recovery for medical bills, pain and suffering, disability, loss of a normal life, and disfigurement.

¶ 11    In count II of the complaint, Ross-Puhalla claimed loss of consortium, alleging the same underlying facts as the negligence count.

¶ 12    B. The Motion To Dismiss and Related Proceedings

¶ 13    1. *Colson's Motion*

¶ 14    In March 2023, Colson filed a motion to dismiss the complaint on *forum non conveniens* grounds, arguing the proper forum was St. Louis County because (1) the accident occurred there, (2) the fact witnesses were located there, (3) the medical witnesses were located there, (4) the injury occurred there, (5) plaintiffs resided there, and (6) Missouri substantive law applied to the case. Colson asserted that the only connection to Peoria County was his residence, and St. Louis County had the more significant interest in the litigation. Colson asserted that plaintiffs' choice of venue was entitled to minimal deference because (1) they were foreign to their chosen venue and (2) none of the actions giving rise to the litigation occurred in Peoria County.

¶ 15    Colson attached to his motion to dismiss an affidavit from a claims representative, Andrea Grasley, with his insurer, Progressive Direct Insurance Company, which averred that litigation in Peoria instead of St. Louis would substantially increase the costs to litigate the case because defense counsel was based in Peoria and would have to travel to and from St. Louis for

- 3 -

depositions of all the witnesses. Grasley also averred that Perry had told her that he had leg surgery in St. Louis after the injury and would miss "a couple of months" of work. Included in the affidavit was a list of witnesses or descriptions of potential witnesses and a crash report issued by an officer with the Missouri State Highway Patrol.

¶ 16        The witness list included (1) the parties, (2) the other driver involved in the accident, Candice Randolph, (3) one named eyewitness to the accident, Kyle Burns, (4) the officer who wrote the crash report, (5) the supervising officer who signed the report, (6) first responders from the Mehlville Fire Protection District, (7) "[s]everal surgeons, physicians, and other treatment providers," (8) "Perry's employer's personnel manager, if wage losses are claimed," (9) the towing company that towed the vehicles, and (10) "[r]ecords keepers to attest to authenticity of all relevant documents (police records, medical records, employment records, etc.)."

¶ 17        The crash report confirmed the names and locations of many of the witnesses. All but one of the persons or companies named in the crash report were located in St. Louis. Randolph, the only person not residing in St. Louis, lived in Belleville, Illinois. The report described the road conditions as "snow" and "ice/frost" and the weather conditions as cloudy and freezing. The witnesses were unable to tell which lanes of traffic they were in when the crash occurred.

¶ 18                                    2. *Plaintiffs' Response*

¶ 19        In April 2023, plaintiffs filed a response to Colson's motion to dismiss in which they conceded that their choice of forum was entitled to less deference but emphasized that it was still entitled to some deference. Plaintiffs asserted that Colson was improperly equating the potential number of witnesses located in Missouri with the convenience of those witnesses. Other than the eyewitnesses, none of the witnesses listed in the affidavit were likely to be called at trial or even deposed. Plaintiffs argued that, per standard practice, medical providers rarely provided

live testimony at trial, instead having their testimony presented by video deposition. Plaintiffs similarly argued that the three witnesses who were not also parties to the suit could testify by video deposition or remotely and one of those witnesses, Randolph, was an Illinois resident. Plaintiffs argued that the location of documentary evidence was not a significant factor in the age of electronic records and viewing the accident site was not necessary. Plaintiffs also argued that Colson had not provided the names of any witnesses who were unwilling to testify or would suffer inconvenience if the suit continued in Peoria County, much less how those witnesses would be inconvenienced.

¶ 20     Regarding the public interest factors, plaintiffs conceded that Peoria County's docket was more congested than St. Louis County's docket but noted that "court congestion has been held to be a relatively insignificant factor." Plaintiffs also contended that Peoria County had an interest in deciding a controversy involving one of its residents and imposing jury duty would not be unfair.

¶ 21                    C. The Trial Court's Ruling

¶ 22     Later in April 2023, the trial court conducted a hearing on Colson's motion to dismiss pursuant to the doctrine of *forum non conveniens*.

¶ 23     Colson's counsel argued that because Missouri substantive law applied, Colson would incur significant expense by either (1) having Peoria counsel learn Missouri law and travel back and forth to St. Louis to conduct discovery or (2) having to hire Missouri counsel in addition to Peoria counsel to assist in handling the case.

¶ 24     Plaintiffs reiterated that (1) emergency medical services and towing witnesses were unlikely to be deposed and at most would provide records and (2) medical providers mostly provide records, which plaintiffs are required to turn over, and would testify by video deposition.

Plaintiff's counsel emphasized that cross-border litigation between Missouri and Illinois was exceedingly common, and counsel stated, "I'll stipulate and put on the record that if [Colson] needs to open up an action down there and needs to subpoena somebody, I'll do it. And I'm happy to open that up." Plaintiffs further emphasized how convenient Peoria County was for Colson, who lived about two miles from the courthouse.

¶ 25        The following exchange then occurred:

"THE COURT: And, Mr. Cagle [(plaintiffs' counsel)], this is one of my major concerns. I have applied the test. But then I come back to paragraph 8 which reads, Missouri substantive law governs the Plaintiffs' claim. And I'll be brief, but we want to do this right.

And why would a Court handle a case when the subject matter experts on Missouri law are judges in Missouri? I mean, I'm certain we could do this case no fuss, no muss. But still we're going to be dealing with substantive Missouri law.

And so why should this case remain here?

MR. CAGLE: Well, I tell you what, Judge, if it makes you feel better, I'll move to strike that paragraph by interlineation. That's a copy and paste mistake.

I don't know of any substantive Missouri law that is going to apply to this case, and I will openly admit that in court right now. I plan on using form—Illinois model jury instructions. I don't know anything. I plan on using Illinois law. We're going to use Illinois Jury Instructions, Illinois law.

Again, Plaintiff will consent—strike that portion of his complaint right now. That is not our intent. That was a copy and paste, Judge. I had an associate that drafted this. And I can tell you openly we're not going to apply any Missouri law

here. There's nothing to apply. It's a car accident, Judge.

THE COURT: It's a car accident in Missouri.

MR. CAGLE: Okay.

THE COURT: With a Missouri plaintiff. And aren't the bulk of the witnesses going to be folks that live in Missouri?

MR. CAGLE: That's what I just told you. If you look at down the lane we have two Plaintiffs. We have got the Defendant. They're all coming here. We have got an Illinois witness in Belleville. That's four. The only other two witnesses are—one other witness that was involved in the case.

THE COURT: Belleville is what, less than 50 miles away from where you're going to be trying this case. And it's maybe two and a half, three hours to Peoria.

MR. CAGLE: Judge, I'm going to have two of the witnesses in Missouri the same way. What am I going to do about the highway patrolman? What am I going to do—I mean, you know, again, if I'm back here, then I have the witness in Belleville, and I am going to have to open up an Illinois action to subpoena the witness in Belleville.

I mean, that's my point, Judge, is we do this all of the time down the border because we have so many witnesses on both sides. And this is—it's not—it's just literally opening up a Missouri action.

THE COURT: This is my struggle, Mr. Cagle. Great deference is given to the Plaintiffs' decision. And, in theory, this is proper venue. In theory. But then we have to balance the public/private test. And you've waived my concern regarding

substantive law.

* * *

MR. O'DONNELL [(COLSON'S COUNSEL)]: Judge, I don't agree that Illinois law applies. This whole issue with damages recoverable is not necessarily a rule of evidence. It's not in Illinois Rules of Evidence. This is a substantive body of law.

And to be blunt, it is forum shopping, and *Langenhorst* and *Dawdy* and the most recent one *Hansen-Runge* all make clear that you don't apply the same level of deference when the only minimal contact is this is where the Defendant is.

* * *

Under applicable current Illinois rules of taxable costs, because these are all out of state doctors, he can seek to tax all of their fees against us in an Illinois case under Illinois taxable cost law for depositions, for evidence depositions. That rule does not apply if those evidence depositions of the physicians are of Illinois doctors, because they're subject to the subpoena power.

And that's a significant consideration that I didn't put in my brief but that needs to be considered by the Court. The amount of costs that they seek to force upon the Defendant is immense by picking this venue.

And, again, I don't know what Missouri traffic court rules are. But if the man is as egregiously injured as he claims and in a phone call we had he had more than one surgery, then we're going to need to fully defend the case given contentions that have been advanced.

So I think, Judge, there's very little favorable ability [*sic*] or very little

deference you give in a situation where the only connection is this man is living here temporarily. I don't know when he is going to move. If I knew that exactly, I could tell you[,] but I don't.

THE COURT: Do you want to say anything else?

MR. CAGLE: The only thing I would say, Judge, is if you look at the police report, driver one, which is the Defendant, said he was trying to avoid a truck and trailer that was traveling slow and he traveled into the embankment.

I don't know where he got the statement that was said and he represented to the Court was made. As far as any expense of the doctors and taxable cause, again, I'll stipulate right now, Judge, we'll waive that taxable cause for any doctors out of state. I mean, you know, it's a nonissue. We'll waive that.

And, again, I'm happy to sign a stipulation. I assume we're putting this on the record, right, Judge?

THE COURT: Everything is on the record.

MR. CAGLE: Good. Well, we'll waive it as it relates to out of state doctors. We'll stipulate that we'll open any pleading that needs to be, that way he can have subpoena power in Missouri.

I mean, again, we've got people on both sides of the river of this crash, factual witnesses. And not just the Defendant. I mean, we have—one of the people involved is in Belleville. And I understand you're thinking about being closer, but it's still the same issue. I still have to open up an Illinois action if it's in Missouri, Judge, for that Belleville witness, right?

It's the same as if we would have to open up for the reporting police officer

or the other Missouri witness here. Again, you weighing both these things, at best it's a 50/50 draw, and they're not meeting their burden. It's strongly favorable.

* * *

THE COURT: Okay. I have reviewed the pleadings, reviewed the case law, and I have reviewed Rule 187. The public and private interest factors I think in this case are more closely matched than Mr. O'Donnell states.

I think at first glance I give some weight to Mr. O'Donnell's argument that, well, really the only connection is the Defendant's residence here. But at closer review, that's not actually the case.

Additionally, if I had any concerns, they have been allayed by Mr. Cagle's representations that Mr. Cagle, we're going to hold you to.

MR. CAGLE: Please do.

THE COURT: And I assume that as an officer of the Court that you will amend your complaint, specifically paragraph 8, to note clearly that Illinois substantive law will apply to this case.

Additionally, you will waive the taxable cost issue that has concern for Mr. O'Donnell and that if it's necessary, you will open up a suit in Missouri to alleviate Mr. O'Donnell's concerns with subpoenaing both witnesses and records.

In light of that and balancing the private and public interest factors and looking carefully and understanding that the Plaintiff is entitled to a great deal of deference in his forum selection, I'm going to respectfully deny Mr. O'Donnell's motion."

¶ 26    The trial court entered a written order denying Colson's motion to dismiss "for [the]

reasons stated on [the] record" and granting plaintiffs leave to file an amended complaint. The order further noted that plaintiffs stipulated that they would (1) "not attempt to apply Missouri substantive law," (2) not attempt to collect taxable court costs for the evidence depositions of Perry's medical providers in Missouri, and (3) "cooperate with Defendant's counsel and open a miscellaneous action for application for issuance of subpoenas pursuant to Missouri Supreme Court Rule 57.08 at Plaintiffs' cost if so requested."

¶ 27                                D. Relevant Procedural History

¶ 28         In May 2023, plaintiffs filed an amended complaint that contained substantially similar allegations to the original complaint but removed any reference to (1) Missouri substantive law and (2) Missouri statutes. Plaintiffs also alleged that Perry had incurred $137,000 in medical expenses related to the accident.

¶ 29         Later in May 2023, Colson petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020), and in July 2023, we granted Colson's petition.

¶ 30         This appeal followed.

¶ 31                                II. ANALYSIS

¶ 32         Colson appeals, arguing the trial court abused its discretion by denying his motion to dismiss pursuant to the doctrine of *forum non conveniens*. We agree and reverse.

¶ 33                       A. The Doctrine of *Forum Non Conveniens*

¶ 34         "The doctrine of *forum non conveniens* assumes that there is more than one forum with the power to hear the case." *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 12, 987 N.E.2d 355. "The doctrine allows a court to decline jurisdiction of a case, even though it may have proper jurisdiction over the subject matter and the parties, if it appears that another forum can

- 11 -

better serve the convenience of the parties and the ends of justice." *Id.*

¶ 35    The Illinois Supreme Court addressed the doctrine of *forum non conveniens* in *Tabirta v. Cummings*, 2020 IL 124798, ¶ 18, in which it wrote the following:

> "Venue is distinct from the equitable doctrine of *forum non conveniens*. *Foster v. Chicago & North Western Transportation Co.*, 102 Ill. 2d 378, 384 (1984). A motion filed pursuant to *forum non conveniens* seeks to move the action from one forum with proper venue to another, more convenient forum with proper venue. *Id.* at 384-85. In considering a *forum non conveniens* motion, the trial court looks beyond the statutory criteria for venue to determine the relative convenience of each forum. *Id.* The court makes this determination by balancing relevant public interest and private interest factors. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443-44 (2006)."

¶ 36    "In determining whether the doctrine of *forum non conveniens* applies, the circuit court must balance the public and private interest factors." *Fennell*, 2012 IL 113812, ¶ 17.

> " '[P]rivate interest factors include (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive * * *.' [Citation.] Public interest factors include (1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443-44, 848 N.E.2d 927, 935 (2006) (citing *First American Bank v.*

*Guerine*, 198 Ill. 2d 511, 516-17, 764 N.E.2d 54, 59 (2002)).

¶ 37 The factors are not weighed against each other; instead "the [trial] court must evaluate the total circumstances of the case in determining whether the balance of factors strongly favors dismissal." *Fennell*, 2012 IL 113812, ¶ 17. "If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." (Internal quotation marks omitted.) *Id.* "[E]ach *forum non conveniens* case is unique and must be considered on its own facts." *Id.* ¶ 21.

¶ 38 *Forum non conveniens* has been described as an "unequal balancing test." *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107, 554 N.E.2d 209, 212 (1990). The plaintiff's choice of forum is entitled to deference and should rarely be disturbed unless the factors weigh strongly in favor of transfer or dismissal. *Fennell*, 2012 IL 113812, ¶ 18. However, a plaintiff's choice of forum is entitled to less deference if the plaintiff is foreign to the forum and if the action giving rise to the litigation did not occur in the chosen forum. *Id.*

¶ 39 A trial court's order granting or denying a motion on the doctrine of *forum non conveniens* is reviewed for an abuse of discretion. *Id.* ¶ 21. "An abuse of discretion will be found where no reasonable person would take the view adopted by the [trial] court." *Id.*

¶ 40                                     B. This Case

¶ 41 As an initial matter, we note that the trial court in the present case appears to have made several crucial mistakes while weighing the *forum non conveniens* factors. Specifically, the court erred by (1) continuing to afford plaintiffs' choice of forum great deference; (2) giving significantly greater weight to Colson's decreased litigation costs over the inconvenience and increased costs for witnesses; and (3) failing to consider the significant public interest factors that favored St. Louis County, including (a) the interest in deciding the controversy locally and

(b) Missouri's interest in applying its own law. Properly understood, all three of these factors favor dismissal significantly more than the court found, if it considered them at all.

¶ 42    Based on our review of the record, it appears the trial court may well have reached a different result had plaintiffs squarely addressed the private and public interest factors instead of simply conceding matters whenever possible to assuage the court's concerns. In any event, we reverse the trial court's order and remand with directions to grant Colson's motion to dismiss with appropriate conditions to permit plaintiffs to refile the action in Missouri.

¶ 43                    1. *Deference to Plaintiffs' Choice of Forum*

¶ 44    The trial court twice stated that plaintiffs' choice of forum was entitled to great deference. For instance, when speaking with plaintiffs' counsel, the court stated, "Great deference is given to the Plaintiffs' decision." Even after Colson repeatedly informed the court that the Illinois Supreme Court has been clear that plaintiffs' choice of forum was entitled to substantially less deference because Peoria County was neither plaintiffs' home county nor where any part of the accident occurred, the court still concluded by saying, "In light of that and balancing the private and public interest factors and looking carefully and understanding that the Plaintiff is entitled to a great deal of deference in his forum selection," and the court denied Colson's motion. The court's statement of deference under the facts of this case was simply incorrect.

¶ 45                    2. *The Private Interest Factors*

¶ 46    The Illinois Supreme Court in *Fennel*, 2012 IL 113812, ¶ 15, wrote the following:
> "Private interest factors include: the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure attendance of unwilling witnesses; the cost to obtain attendance of willing witnesses; the possibility of viewing the premises, if

appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive."

¶ 47                    a. The Convenience of the Parties

¶ 48        Plaintiffs argue that Colson resides less than two miles from the Peoria County courthouse and cannot make a showing of inconvenience. However, the doctrine of *forum non conveniens* goes beyond the criterion of venue because that doctrine already assumes the trial court has jurisdiction over the defendant. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 172-73, 840 N.E.2d 269 (2005). Although we do not consider any inconvenience to the plaintiffs with respect to their chosen forum (*Fennell*, 2012 IL 113812, ¶ 27), a defendant is still required to show "that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties." *First American Bank*, 198 Ill. 2d at 518.

¶ 49        St. Louis County is much more convenient for plaintiffs, the only other parties to the suit. And the affidavit attached to Colson's motion, as well as the representations of Colson's counsel, demonstrate that Colson's litigation costs would be significantly higher if the case remained in Peoria and counsel was forced to travel for depositions or hire local counsel in Missouri. If the case were filed in St. Louis, however, the insurance provider would retain new counsel located in the St. Louis area.

¶ 50        The trial court was led astray by plaintiffs' various concessions. Each time Colson explained why the private interest factors favored dismissal—namely, St. Louis County was far more convenient and imposed less costs on the witnesses and Colson himself—plaintiffs, instead of addressing the appropriate factors on their merits, responded by informing the court they would lessen Colson's costs by (1) paying to open up a Missouri action to facilitate subpoenas and

(2) agreeing not to seek taxable costs for evidence depositions of medical providers. Although plaintiffs, as masters of their own case, were certainly free to forgo seeking to recover certain costs or to open an action in Missouri, those actions only affected Colson, while the *forum non conveniens* analysis encompasses significant considerations of convenience to witnesses and efficiency in judicial proceedings. Accordingly, the court placed too much weight on plaintiffs' monetary concessions.

¶ 51      b. Access to Sources of Testimonial, Documentary, and Real Evidence

¶ 52      This factor considers the convenience to witnesses and the ability to review documents and any real evidence. We acknowledge that "the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of Internet, email, telefax, copying machines, and world-wide delivery services, since those items can now be easily copied and sent." *Fennell*, 2012 IL 113812, ¶ 36. However, although the location of documentary evidence is entitled to little weight, the availability of live witness testimony remains an important consideration because it is strongly preferred over remote appearances. *Larson v. Illinois Central School Bus, LLC*, 2023 IL App (3d) 220360, ¶ 27.

¶ 53      The parties have not identified any "real evidence" to consider, and the location of documentary evidence is not a significant factor in an age of electronic medical records. However, all but one of the potential witnesses in this case are located in St. Louis County, and the only remaining witness resides in St. Clair County, Illinois. Peoria is approximately 170 miles from St. Louis. See *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177-78, 797 N.E. 2d 687, 696-97 (2003) (stating courts may take judicial notice of geographic distances between locations and usual travel times). Requiring witnesses to travel to Peoria would be inconvenient, at best, and would likely make scheduling significantly more difficult. Once again, this factor shows that St. Louis

County is clearly more convenient than Peoria County.

¶ 54                                    c. Possibility of Viewing the Premises

¶ 55          The possibility of viewing the premises "is an important consideration in ruling on a *forum non conveniens* motion." *Fennell*, 2012 IL 113812, ¶ 37. "This convenience factor is not concerned with the *necessity* of viewing the premises, but rather is concerned with the *possibility* of a view, if appropriate." (Emphases in original.) *Id.* This case involves an automobile accident, and the location of the accident could certainly be relevant to whether Colson breached his duty of care by operating his vehicle in an unreasonable manner, given the circumstances present at the time of that accident. See *Larson*, 2023 IL App (3d) 220360, ¶ 36 ("In accidents involving vehicles, jurors may need to view the accident site to observe road crossings, signs, and sight lines from the perspective of the parties."); *Inman v. Howe Freightways, Inc.*, 2022 IL App (1st) 210274, ¶ 52, 205 N.E.3d 876 (explaining that the location of an automobile accident can be important). Accordingly, the possibility exists that the fact finder would be called upon to view the location of the accident, and this factor also favors dismissal.

¶ 56                                    d. Other Factors of Convenience

¶ 57          The final private interest factor trial courts consider is "all other practical problems that make trial of a case easy, expeditious, and inexpensive." (Internal quotation marks omitted.) *Langenhorst*, 219 Ill. 2d at 443. One "practical problem" courts place particular emphasis on is "the availability of compulsory process to secure the attendance of unwilling witnesses." *Gridley*, 217 Ill. 2d at 173. The supreme court has held that when "[t]he residence of plaintiff, the situs of the injury, and the location of *** witnesses" are in a different state, these facts weigh in favor of transfer. *Fennell*, 2012 IL 113812, ¶ 34; see *Gridley*, 217 Ill. 2d at 173-74 (discussing expense and inconvenience where all relevant witnesses were located and events occurred in Louisiana).

¶ 58 We note that plaintiffs, as they did before the trial court, argue extensively that the witnesses Colson identified are not likely to be deposed or called to provide live testimony at trial. However, at this early stage of the case, we cannot say which witnesses are the most important or how they will testify at trial, if required. The doctrine of *forum non conveniens* is meant to be addressed and applied early in cases to promote maximum efficiency. Because the parties have not yet engaged in discovery, we are concerned with the greatest convenience for the greatest number of witnesses. All of Perry's medical providers are in St. Louis. All of the emergency personnel—law enforcement, ambulance, towing—are located in St. Louis. The two nonparty witnesses involved both reside within 15 miles of St. Louis. Should discovery reveal that any of these witnesses are crucial, St. Louis County is clearly the more convenient forum.

¶ 59 3. *The Public Interest Factors*

¶ 60 The substantive law applicable to a case is a significant factor in determining the fundamental fairness of imposing costs of litigation on forum residents and the interest in having local controversies decided locally. See *Gridley*, 217 Ill. 2d at 175 (" 'The need to apply the law of a foreign jurisdiction has been considered a significant factor favoring dismissal of a suit on grounds of *forum non conveniens*.' " (quoting *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80, 457 N.E.2d 417, 420 (1983)). In *Fennell*, the supreme court stated "[t]he public interest requires that causes which are without significant factual connections to particular forums be dismissed in favor of, or transferred to, convenient forums." *Fennell*, 2012 IL 113812, ¶ 44. " 'This court has consistently held that a case should not be tried in a forum that has no significant factual connections to the cause of action.' " *Id.* ¶ 46 (quoting *Foster v. Chicago & North Western Transportation Co.*, 102 Ill. 2d 378, 383, 466 N.E.2d 198, 200 (1984)). The location of the accident or other facts giving rise to the cause of action is frequently considered to be one

of the most significant factors in giving an action a local interest. *Dawdy*, 207 Ill. 2d at 183. As demonstrated by the supreme court's decision in *Fennell*, the facts considered in determining whether a forum has an interest in deciding a local controversy apply with equal force to whether a sufficient connection exists to impose the costs of litigation and jury duty on residents. See *Fennell*, 2012 IL 113812, ¶¶ 44-47.

¶ 61    The trial court expressed that its greatest concern was applying Missouri law in a case that had little to do with Peoria County. Plaintiffs responded by insisting that they always intended to apply Illinois substantive law and sought leave to amend their complaint to reflect that intention. The court stated plaintiffs had "waived my concern regarding substantive law," and, "if I had any concerns, they have been allayed by Mr. Cagle's representations" regarding the applicable law and waiver of certain costs.

¶ 62    Because of plaintiffs' responses, the trial court did not conduct any analysis of these factors, apparently concluding that they either (1) were no longer relevant or (2) no longer weighed in favor of dismissal. Although the trial court's doing so is unsurprising in light of plaintiffs' arguments, we conclude the court erred by failing to give these factors significant weight in the analysis.

¶ 63    Missouri has the strongest connection to the litigation because the accident occurred—and the plaintiffs reside—in St. Louis County. Although Colson's residence in Peoria is sufficient to give the residents of Peoria County a minimal interest in the litigation, the doctrine of *forum non conveniens* looks beyond the mere statutory elements of venue to what forum would best serve the convenience of the parties and the ends of justice. *Id.* ¶ 12. Plaintiffs do not raise a claim premised on an Illinois statute, and it is unclear why Illinois law would apply to a traffic accident that was not caused or contributed to by anything that occurred within Illinois's borders.

¶ 64   Accordingly, we reverse the trial court's order and remand with directions to grant Colson's motion to dismiss with appropriate conditions to permit plaintiffs to refile the action in Missouri.

¶ 65         III. CONCLUSION

¶ 66   For the reasons stated, we reverse the trial court's order denying Colson's motion to dismiss for *forum non conveniens* and remand the case for further proceedings as directed.

¶ 67   Reversed and remanded with directions.